## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>USAPE LLC<br><br>                    Defendant. | Case No. **1:23-cv-00660**<br><br>**COMPLAINT FOR:**<br><br>**(1) Trademark Infringement in Violation of 15 U.S.C. § 1114**<br><br>**(2) False Designation of Origin / Unfair Competition in Violation of 15 U.S.C. § 1125(a)**<br><br>**(3) Common Law Trademark Infringement and Unfair Competition**<br><br>**(4) Trademark Infringement under New York General Business Law § 133**<br><br>**(5) Dilution under New York General Business Law § 360-L**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Nike, Inc. ("Nike") for its Complaint against Defendant USAPE LLC ("BAPE") alleges as follows:

### PRELIMINARY STATEMENT

1.      Nike owns some of the world's most valuable trademarks.  Among them are Nike's trade dress designs for its iconic Air Force 1, Air Jordan 1, and Dunk sneakers.  Nike has spent decades building its rights and goodwill in those designs.  To protect its hard-earned rights, Nike has a legal obligation to stop copyists when their infringements pose a significant danger to Nike's rights.

2.      BAPE is one such copyist whose infringements have recently grown to become a significant danger to Nike's rights.  BAPE's current footwear business revolves around copying Nike's iconic designs.  As shown below, five of BAPE's footwear products—the BAPE STA,

BAPE STA Mid, SK8 STA, COURT STA High, and COURT STA—are near verbatim copies of Nike's Air Force 1, Air Jordan 1, and Dunk sneaker designs.

| Nike's Trademarked Designs | Genuine Nike Products | BAPE's Infringing Products |
|---|---|---|
| U.S. Reg. No. 3,451,905 | Air Force 1 Low | BAPE STA |
| U.S. Reg. No. 3,451,906 | Air Force 1 Mid | BAPE STA Mid |
| U.S. Reg. No. 3,711,305 | Dunk Low | SK8 STA |
| U.S. Reg. No. 5,820,374 | Air Force 1 Midsole Design | BAPE STA |
| U.S. Reg. No. 6,386,694 | Air Jordan 1 High | COURT STA High |
| U.S. Reg. No. 6,368,691 | Air Jordan 1 Low | COURT STA |

3.      BAPE introduced its first infringing footwear in the United States in 2005.  But until recently, BAPE's sale of infringing footwear in the United States was *de minimis* and inconsistent.  For fifteen years, the presence of BAPE's infringing footwear in the United States resembled the famous Whac-A-Mole arcade game: infringing products appeared and then disappeared from the United States market for years; BAPE opened stores in the United States and then shuttered them a few years later; and BAPE was purchased by a Hong Kong fashion conglomerate that shifted BAPE's focus to markets outside the United States.  And at all times prior to 2021, the quantity of BAPE's infringing footwear in the United State was never more than a small fraction of the millions of pairs Nike sells annually.

4.      But beginning in 2021, BAPE drastically increased the volume and scope of its infringement.  After a five-year period where BAPE sold a redesigned version of the BAPE STA in low volumes, BAPE returned to its initial infringing BAPE STA design, which commentators had described as the result of "conspicuous Nike Air Force 1 'inspiration.'"  Minh Vuong, *BAPE Bringing Back Original BAPE STA Silhouette*, SNEAKER FREAKER, https://www.sneakerfreaker.com/news/bape-bringing-back-original-bape-sta-silhouette (Dec. 13, 2020).  At the same time, BAPE began rapidly expanding its physical presence in the United States, opening new brick-and-mortar stores in New York, Los Angeles, and Miami.  Also in 2021, BAPE introduced various versions of the SK8 STA, the COURT STA, and the COURT STA High—all of which are copies of iconic Nike designs.  As one commentator noted, the "obvious inspiration for this new [COURT STA] model is the Air Jordan 1, which keeps up BAPE's tradition of mimicking popular Nike sneakers."  Victor Deng, *Bape's Court Stas are Dropping Next Week*, SOLE COLLECTOR, https://solecollector.com/news/a-bathing-ape-court-sta-release-date (Jan 29, 2021).

5.      BAPE's copying is and always has been unacceptable to Nike, and because BAPE's infringements have recently grown to become a significant danger to Nike's rights, Nike must act now.  Nike notified BAPE of its infringements and asked it to stop.  BAPE refused to do so. Instead, BAPE continues to escalate its infringing activity.  Nike, therefore, is forced to bring this lawsuit to stop BAPE's unauthorized use of Nike's trademarks.

## THE PARTIES

6.      Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

7.      On information and belief, BAPE is a limited liability company organized under the laws of the State of Delaware with a principal place of business at 91 Greene Street, New York, New York 10012.

## JURISDICTION AND VENUE

8.      This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, et seq., and under statutory and common law unfair competition.  This Court has subject matter jurisdiction at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law.  This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

9.      This Court may exercise personal jurisdiction over BAPE because it does business in this District, owns and operates stores that sell infringing products in this District, and has committed acts of infringement at issue in this Complaint in this District.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because BAPE resides in this District, owns and operates stores that sell infringing products in this District, and has committed acts of infringement at issue in this Complaint in this District.

## FACTUAL BACKGROUND

**A.    NIKE**

11.    Nike's principal business activity is the design, development and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories and services.

12.    Nike is the largest seller of athletic footwear and apparel in the world.

13.    Nike sells its products directly to consumers through Nike-owned retail stores and digital platforms, and to retail accounts and a mix of independent distributors, licensees and sales representatives in virtually all countries around the world.

14.    Nike's distinctive, readily identifiable trademarks are an important factor in creating a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.

15.    As a result of continuous and long-standing promotion, substantial sales, and consumer recognition of products bearing Nike's trademarks, Nike has developed powerful trademark rights.

**B.    NIKE'S AIR FORCE 1 TRADE DRESS**

16.    Launched in 1982 as one of Nike's first basketball sneakers, the Air Force 1s revolutionized sneaker culture forever.  Today, over three decades since its first release, the Air Force 1—bearing the same, classic silhouette—is a fashion staple with nearly 2,000 editions and colorways.

17.    Shortly after its release, Nike signed six NBA players to wear the Air Force 1s on the court, dubbed the "Original Six": Moses Malone (Philadelphia 76ers), Michael Cooper (L.A. Lakers), Bobby Jones (Philadelphia 76ers), Calvin Natt (Portland Trail Blazers), Mychal

Thompson (Portland Trail Blazers), and Jamaal Wilkes (L.A. Lakers). Nike's original Air Force 1 advertisement featuring the "Original Six" is reproduced below.



18.     Nike planned to retire the Air Force 1 in 1984, as was standard practice for Nike at the time. But demand for the wildly-popular sneakers was unparalleled, and retailers urged Nike to continue producing the Air Force 1.

19.     Nike embraced the consumers' demand and agreed to continue manufacturing Air Force 1s in limited quantities. Nike began with a small release of royal blue and chocolate brown colorways. All 3,000 pairs sold out as soon as they hit the shelves. The popularity of this release led to the "Color of the Month" initiative, where Nike introduced limited releases of special-edition colorways at select retailers. The "Color of the Month" program was revolutionary for its era and immensely successful, serving as an early indicator of the Air Force 1's staying power, a signal of the sneaker's transition from the basketball to the fashion realm, and a blueprint for a new way of breathing life into archival silhouettes.

20.     In the 2000s, the popularity of the Air Force 1s among globally influential celebrities and musicians propelled the shoes into popular culture. Nike collaborated with famous designers to create highly anticipated limited edition Air Force 1 styles and colorways. These

collaborations and limited-run releases gave the Air Force 1s a coveted level of prestige and helped spread its gospel to new generations and demographics. Today, there are nearly 2,000 different colorways and styles of Air Force 1s.

21.     Since the launch of the Air Force 1s, Nike has continuously and substantially exclusively used, promoted, and sold sneakers bearing the Air Force 1 trade dress.

22.     Nike has sold hundreds of millions of Air Force 1s in the United States, accounting for billions of dollars in revenue.

23.     As a result of Nike's extensive sales, advertising, and promotion of the Air Force 1, the Air Force 1 trade dress has become famous in the United States and around the world.

24.     Nike registered the Air Force 1 trade dress on the Principal Register of the U.S. Patent and Trademark Office. Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|----------|-----------|-----------|-------|------------|
| 3,451,905 |  | June 24, 2008 | Footwear | 1 |
| 3,451,906 |  | June 24, 2008 | Footwear | 2 |
| 5,820,374 |  | July 30, 2019 | Footwear | 3 |

25.     Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration Nos. 3,451,905 and 3,451,906 are incontestable and constitute conclusive evidence of the validity of the Air Force

1 trade dress, Nike's ownership of the Air Force 1 trade dress, and Nike's exclusive right to use the Air Force 1 trade dress.

**C.     NIKE'S DUNK TRADE DRESS**

26.     The Nike Dunk sneaker began as a basketball sneaker in the 1980s.

27.     Nike introduced the Dunk sneaker in 1986 in connection with its College Colors Program.  College basketball players had typically worn single color shoes (*e.g.*, white or black). Nike's College Colors Program offered schools the opportunity to have shoes that mirrored their school colors.  Nike's original "Be True to Your School" advertisement for its College Colors Program is reproduced below.



28.     Nike's College Colors Program became wildly popular.  At that time in the 1980s, college basketball was reaching new heights among a wide age range of athletes and fans.  From east to west, rivalries were strong and network TV brought college hoops, and Nike's Dunk sneakers, to the masses.

29.     The Dunk's adoption and popularity eventually spread beyond basketball culture as the skateboard community organically adopted the Dunk as a skate icon by the 2000s.  From

there, the Dunk crossed over sports and fashion, and today it is recognized as one of the most iconic and influential sneakers of all time.

30.    Nike has registered the Dunk trade dress on the Principal Register of the U.S. Patent and Trademark Office.  Nike owns all right, title, and interest in the U.S. Trademark Registration identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|----------|-----------|-----------|-------|------------|
| 3,711,305 | | Nov. 17, 2009 | Footwear | 4 |

31.    Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration No. 3,711,305 is incontestable and constitutes conclusive evidence of the validity of the Dunk trade dress, Nike's ownership of the Dunk trade dress, and Nike's exclusive right to use the Dunk trade dress.

**D.    NIKE'S AIR JORDAN 1 TRADE DRESS**

32.    Nike's Creative Director, Peter C. Moore, designed the Nike Air Jordan 1 for Michael Jordan in 1984 during his rookie year in the NBA.

33.    The classic and unique design of the Air Jordan 1 was unlike any sneaker previously worn by NBA players. The NBA warned Nike that the sneakers violated its uniform rules:



Case 1:23-cv-00660    Document 1    Filed 01/25/23    Page 10 of 28

34.     Nevertheless, Michael Jordan's continued use of the Air Jordan 1 provided significant publicity for the sneakers.  A few weeks after receiving the NBA's warning, Air Jordan 1 advertisements appeared on televisions all over the country.

35.     Nike released the Air Jordan 1 to consumers in 1985.  Originally released in the black and red colorway, Nike released thirteen additional colorways that same year.  The classic design was unique for its time and was extremely popular with consumers, selling out immediately.

36.     While the sneakers were originally marketed in the context of basketball, its unique design made the Air Jordan 1s sought after for other sports and contexts, including as a lifestyle symbol and a fashion icon.  Today, the Air Jordan 1 continues to be recognized as having one of the most famous and influential sneaker designs of all time.

37.     Nike has registered the Air Jordan 1 trade dress on the Principal Register of the U.S. Patent and Trademark Office.  Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|----------|-----------|-----------|-------|------------|
| 6,368,694 |  | June 1, 2021 | Footwear | 5 |
| 6,368,691 |  | June 1, 2021 | Footwear | 6 |

**E.     NIKE MAINTAINS STRICT CONTROL OVER ITS TRADEMARKS AND NIKE'S RELATED BUSINESS REPUTATION AND GOODWILL.**

38.     Nike's Air Force 1 trade dress, Air Jordan 1 trade dress, and Dunk trade dress are collectively referred to in this complaint as the "Asserted Marks."

COMPLAINT – Page 10

39.     Nike maintains strict quality control standards for its products bearing the Asserted Marks.  Genuine Nike products bearing the Asserted Marks are inspected and approved by Nike prior to distribution and sale.  The quality of products lawfully produced which bear the Asserted Marks is high.

40.     Nike also maintains strict control over the use of the Asserted Marks in connection with its products so that Nike can maintain control over its related business reputation and goodwill.  For example, Nike carefully chooses who it collaborates with and what messages its designs convey.  Likewise, Nike carefully determines how many products bearing the Asserted Marks are released, where the products are released, when the products are released, and how the products are released.  These considerations are an integral part of Nike's branding and quality control over its designs.

E.     BAPE's UNLAWFUL ACTIVITIES

41.     BAPE has wrongfully capitalized on Nike's fame and its Asserted Marks by making, promoting, advertising, marketing, and selling in the United States footwear bearing the Asserted Marks and/or confusingly similar marks (the "Infringing Products").

42.     BAPE's Infringing Products include sneakers BAPE refers to as BAPE STA, BAPE STA Mid, COURT STA, COURT STA High, SK8 STA, and any other footwear that bears the Asserted Marks and/or confusingly similar marks.

43.     BAPE was founded in Japan by Tomoaki Nagao in 1993.  Initially, BAPE exclusively sold apparel in Japan, where it generated popularity through limited supply and

exclusivity.[1]  In the early 2000s, BAPE began selling footwear in Japan and released the BAPE STA.[2]

44.     BAPE began selling its products in the U.S. in the mid-2000s.  But BAPE faced a number of problems in the U.S. footwear market due to scarcity of product and high pricing.[3]  Its presence and product offerings in the U.S. footwear market were limited and not widely available through online websites or markets.  Instead, upon information and belief, BAPE's footwear was only officially available through its New York and Los Angeles stores, which opened in 2005 and 2006 respectively, and through its U.S. webstore, which did not open until 2009.  During this time, BAPE struggled to cultivate the same hype it had built in Japan.[4]

45.     Despite its minimal presence in the U.S. market, Nike contacted and met with BAPE in 2009 to address BAPE's pirating of Nike's iconic Air Force 1 design and to protect Nike's intellectual property rights.  Following the meeting, BAPE significantly and materially diminished its U.S. activities.  For example, that same year, Nagao stepped down as BAPE's CEO.  Shortly thereafter in 2010, BAPE closed all but one of its U.S. stores.[5]  In 2011, BAPE shifted its focus from its already waning U.S. presence to its Chinese and Taiwanese audiences following its acquisition by the Hong Kong fashion conglomerate—I.T. Ltd.[6]  Then, in 2016, BAPE redesigned the BAPE STA to less resemble Nike's designs.[7]

---

[1] *See* Medium.com, *The Complete History of A Bathing Ape* (November 4, 2016), available at: https://medium.com/@contact.underline/the-complete-history-of-a-bathing-ape-59e07f4ab44b.
[2] *See* M. Vuong, *BAPE Bringing Back Original BAPE STA Silhouette*, SNEAKER FREAKER (Dec. 13, 2020), available at: https://www.sneakerfreaker.com/news/bape-bringing-back-original-bape-sta-silhouette.
[3] *See* G. Foley, *Everything You Ever Wanted To Know About BAPE*, HighSnobiety.com, available at: https://www.highsnobiety.com/p/bape-a-bathing-ape/.
[4] *Id*.
[5] *See supra*, n.1.
[6] *Id*.
[7] *See supra*, n.2.

46.     But in 2021, after years of *de minimis* and sporadic sales of infringing footwear, BAPE drastically increased its infringement of Nike's trademarks.  On February 6, 2021, BAPE re-introduced the original, infringing BAPE STA silhouette after a five year hiatus.[8]  Around that time, BAPE also introduced various versions of the infringing COURT STA and SK8 STA sneakers.  Meanwhile, BAPE was rapidly expanding its physical presence in the United States, opening new stores in New York City (Madison Ave. & Soho), Los Angeles, and Miami.[9]  Today, the BAPE STA, COURT STA, and SK8 STA sneakers are available for purchase nationwide on BAPE's U.S. website [us.bape.com] and in its U.S. stores.  More recently, CVC Capital Partners Asia V Limited ("CVC") announced that it completed an investment in BAPE to support the expansion of BAPE's business both online and geographically, with a focus of pursuing the United States market.[10]

47.     Examples of BAPE's Infringing Products are shown below next to the Asserted Marks.  BAPE's Infringing Products are near-verbatim copies of Nike's Asserted Marks.

| Nike's Trademarked Designs | BAPE's Infringing Products |
| --- | --- |
|  |  |
| U.S. Reg. No. 3,451,905 | BAPE STA |

---

[8] *Id.*

[9] *See* Us.BAPE.com, Store List, available at: https://us.bape.com/pages/store-list.

[10] *See* PR Newswire, *CVC completes investment in A Bathing Ape to accelerate global expansion*, (June 3, 2021), available at: https://www.prnewswire.com/news-releases/cvc-completes-investment-in-a-bathing-ape-to-accelerate-global-expansion-301304994.html.



U.S. Reg. No. 3,451,906 — BAPE STA Mid

U.S. Reg. No. 3,711,305 — SK8 STA

U.S. Reg. No. 5,820,374 — BAPE STA

U.S. Reg. No. 6,386,694 — COURT STA

48.     There is already confusion in the marketplace, including initial interest confusion, post-sale confusion, confusion in the secondary market, and confusion as to affiliation and/or association between Nike, BAPE, and other third-parties caused by BAPE's copying of the Asserted Marks.  For example, consumers selling BAPE's Infringing Products on the secondary market refer to BAPE's Infringing Products as "AF1s," "Air Force 1s" and "Dunks."



49.     BAPE's practice of collaborating with third-parties to create Infringing Products featuring third-party brands, for example, the recently released Marvel and JJJJound Shoppe products pictured below, is likely to cause additional confusion and mistake as to Nike's affiliation with these third-parties.

| Example BAPE x MARVEL Infringing Product | BAPE x JJJJound Infringing Product |
|---|---|



50.     BAPE's Infringing Products are not genuine Nike products.  Nike did not manufacture or inspect the Infringing Products or any component of the Infringing Products, and it did not authorize BAPE to make, promote, advertise, market, import or sell the Infringing Products.

51.     BAPE's products travel in the same channels of trade and are sold to the same consumers as Nike's genuine products.

52.     BAPE has attempted to capitalize on Nike's valuable reputation and consumer goodwill by using the Asserted Marks and/or confusingly similar marks in a manner that is likely to cause consumers and potential consumers to believe that BAPE's Infringing Products are associated with and/or approved by Nike, when they are not.

53.     Unless stopped, BAPE's Infringing Products and BAPE's use of the Asserted Marks will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, point of sale confusion, post-sale confusion, and confusion in the secondary markets.

54.     On information and belief, BAPE's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of BAPE's Infringing Products and are intended to cause consumers and potential consumers to believe that BAPE's business and products are associated with and/or approved by Nike, when they are not.

55.     BAPE's actions alleged herein are also likely to impair the distinctiveness of Nike's Asserted Marks through false association with BAPE, constituting dilution by blurring.

56.      By virtue of the acts complained of herein, BAPE has created a likelihood of injury to Nike's business reputation and goodwill, caused actual confusion and a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and

BAPE's Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using the Asserted Marks without Nike's permission.

57.     BAPE's actions alleged herein are also willful and deliberate.  On August 24, 2022, Nike sent BAPE a cease-and-desist letter informing BAPE of Nike's infringement allegations.  *See* Exhibit 7.  Despite being on notice of these allegations, BAPE continues to promote, sell, and distribute its Infringing Products in dozens of colorways and through collaborations with multiple third-parties.

58.     BAPE's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless BAPE is permanently enjoined from its wrongful acts.

59.     BAPE's acts complained of herein have caused Nike to suffer irreparable injury to its business.  Nike will suffer substantial loss of goodwill and reputation unless and until BAPE is permanently enjoined from the wrongful acts complained of herein.

## COUNT I: TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114

60.     Nike repeats and alleges each and every allegation of paragraphs 1 through 59, above, as though fully set forth herein.

61.     BAPE has knowingly used and continues to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products BAPE manufactures, advertises, promotes, and sells in the United States, including the Infringing Products.  BAPE has used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

62.     BAPE's use of the Asserted Marks (a) constitutes infringement of the Asserted Marks; (b) is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of BAPE or BAPE's Infringing Products with Nike or Nike's products; and (c) is likely to cause such people to believe in error that BAPE's Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that BAPE is in some way affiliated with Nike.

63.     Nike has no control over the nature and quality of the Infringing Products BAPE offers, and Nike's reputation and goodwill will be damaged – and the value of the Asserted Marks jeopardized – by BAPE's continued use of the Asserted Marks and/or confusingly similar marks. Because of the likelihood of confusion between BAPE's Infringing Products and the Asserted Marks, any defects, objections, or faults found with BAPE's Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks.  As such, BAPE is liable to Nike for infringement of its registered marks under 15 U.S.C. §1114.

64.     As a direct and proximate result of BAPE's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, BAPE will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining BAPE and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

65.     Nike is further entitled to recover from BAPE the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of BAPE's wrongful acts, and disgorgement of profits from BAPE's infringement of the Asserted Marks.

66.     On information and belief, BAPE's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  BAPE's bad faith is evidenced at least by the similarity of the BAPE's Infringing Products to the Asserted Marks and BAPE's continued infringement of the Asserted Marks after having been on notice of its infringement.

67.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

### COUNT II:  FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C § 1125(A)

68.     Nike repeats and alleges each and every allegation of paragraphs 1 through 67, above, as though fully set forth herein.

69.     The Asserted Marks are federally registered and entitled to protection under federal and common law.  Nike has extensively and continuously promoted and used the Asserted Marks for many decades in the United States and worldwide.  Through that extensive and continuous use, the Asserted Marks have become famous and well-known indicators of the origin and quality of Nike products.

70.     BAPE's unauthorized use of the Asserted Marks and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of BAPE and/or BAPE's Infringing Products by creating the false and misleading impression that BAPE's Infringing Products are manufactured by, authorized by, or otherwise associated with Nike.

71.     As a direct and proximate result of BAPE's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, BAPE will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction precluding BAPE and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or confusingly similar marks in connection with BAPE and the promotion, marketing, offer to sell, or sale of any BAPE's products.

72.     Nike is further entitled to recover from BAPE the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of BAPE's wrongful acts, and disgorgement of profits from BAPE's infringement of the Asserted Marks.

73.     On information and belief, BAPE's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  BAPE's bad faith is evidenced at least by the similarity of the BAPE's Infringing Products to the Asserted Marks and BAPE's continued infringement of the Asserted Marks after having been on notice of its infringement.

74.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

### COUNT III:  COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

75.     Nike repeats and alleges each and every allegation of paragraphs 1 through 74, above, as though fully set forth herein.

76.     Nike was the first to use the Asserted Marks.  As a result of Nike's continuous promotion and sales of products bearing Nike's Asserted Marks for many decades, Nike's Asserted

Marks have become widely known, and Nike has been identified in the public mind as the manufacturer of the products that bear the Asserted Marks.

77.     As a result of the experience, care, and service of Nike in producing the products that bear the Asserted Marks, these products have gained a reputation synonymous with fashion, quality, style, and authenticity, the Asserted Marks have gained substantial renown.  Moreover, the Asserted Marks have come to symbolize Nike's reputation for quality and excellence.

78.     BAPE, with knowledge and intentional disregard of Nike's rights, continues to advertise, promote, and sell products using Nike's Asserted Marks and/or confusingly similar marks.  BAPE's acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of its products and Nike's products.

79.     BAPE's acts alleged herein and specifically, without limitation, BAPE's use, manufacture, promotion, offers to sell, and/or selling in the United States products that are confusingly similar to products bearing the Asserted Marks, infringe Nike's exclusive trademark rights in violation of the common law.

80.     As a direct and proximate result of BAPE's wrongful acts alleged above, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless restrained, BAPE will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining BAPE and, as applicable, BAPE's other officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or any confusingly similar marks in connection with BAPE and the promotion, marketing, offer to sell, or sale of any BAPE's products.

81. On information and belief, BAPE's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful. BAPE's bad faith is evidenced at least by the similarity of the BAPE's Infringing Products to the Asserted Marks and BAPE's continued infringement of the Asserted Marks after having been on notice of its infringement.

## COUNT IV: TRADEMARK INFRINGEMENT UNDER
## NEW YORK GENERAL BUSINESS LAW § 133

82. Nike repeats and alleges each and every allegation of paragraphs 1 through 81, above, as though fully set forth herein.

83. BAPE has knowingly used and continues to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products BAPE manufactures, advertises, promotes, and sells in the United States, including the Infringing Products. BAPE has used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

84. BAPE's use of the Asserted Marks (a) constitutes infringement of the Asserted Marks; (b) has confused, and is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of BAPE or BAPE's Infringing Products with Nike or Nike's products; and (c) is likely to cause such people to believe in error that BAPE's Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that BAPE is in some way affiliated with Nike.

85. Nike has no control over the nature and quality of the Infringing Products BAPE offers or the third-parties BAPE chooses to collaborate with, and Nike's reputation and goodwill will be damaged – and the value of the Asserted Marks jeopardized – by BAPE's continued use of the Asserted Marks and/or confusingly similar marks. Because of the likelihood of confusion

between BAPE's Infringing Products and the Asserted Marks, any defects, objections, or faults found with BAPE's Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks.  As such, BAPE is liable to Nike for infringement of its registered marks under New York General Business Law Section 133.

86.    As a direct and proximate result of BAPE's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, BAPE will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining BAPE and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

87.    Nike is further entitled to recover from BAPE the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of BAPE's wrongful acts.

88.    On information and belief, BAPE's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  BAPE's bad faith is evidenced at least by the similarity of the BAPE's Infringing Products to the Asserted Marks and BAPE's continued infringement of the Asserted Marks after having been on notice of its infringement.

89.    As a result of BAPE's conduct, Nike is entitled to injunctive relief enjoining BAPE's conduct described above.

## COUNT V:  DILUTION UNDER NEW YORK
## GENERAL BUSINESS LAW § 360-L

90.     Nike repeats and alleges each and every allegation of paragraphs 1 through 89, above, as though fully set forth herein.

91.     BAPE's offers to sell, sales, distribution, and/or advertisement of the Infringing Products violate section 360-L of New York General Business Law.

92.     Nike's Asserted Marks are commercially and conceptually strong trademarks, which have become distinctive and acquired a secondary meaning capable of dilution prior to BAPE's acts as alleged herein.

93.     BAPE's use of the Asserted Marks and/or confusingly similar marks on the Infringing Products that are substantially similar to the Asserted Marks is likely to dilute the Asserted Marks at least by eroding the public's identification of the Asserted Marks with Nike and by lessening the capacity of the Asserted Marks to identify and distinguish Nike footwear products.

94.     BAPE's use of the Asserted Marks and/or confusingly similar marks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Nike for which Nike has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Marks.

95.     On information and belief, BAPE's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  BAPE's bad faith is evidenced at least by the similarity of the BAPE's Infringing Products to the Asserted Marks and BAPE's continued infringement of the Asserted Marks after having been on notice of its infringement.

96.     As a result of BAPE's conduct, Nike is entitled to injunctive relief enjoining BAPE's conduct described above.

## JURY DEMAND

97.     Pursuant to Federal Rule of Civil Procedure 38(b), Nike hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Nike respectfully prays for:

1.     A judgment and order that BAPE has willfully (A) infringed Nike's Asserted Marks in violation of 15 U.S.C. §1114 and New York General Business Law § 133, (B) used false designations of origin in violation of 15 U.S.C § 1125(a), (C) diluted at least the Nike Asserted Marks in violation of New York General Business Law § 360-L, and (D) violated Nike's common law rights in Nike's Asserted Marks.

2.     A judgment and order enjoining BAPE and BAPE's affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with BAPE, during the pendency of this action and permanently thereafter from:

   a.   Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under Nike's Asserted Marks, any marks substantially indistinguishable therefrom, or any other marks, names, symbols, or logos which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any products that BAPE caused to enter the stream of commerce or any of BAPE's commercial activities are sponsored or licensed by Nike, are authorized by Nike, or are connected or affiliated in some way with Nike or Nike's Asserted Marks;

   b.   Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing

Products) under Nike's Asserted Marks, any marks substantially indistinguishable therefrom, and/or confusingly similar marks;

c. Implying Nike's approval, endorsement, or sponsorship of, or affiliation or connection with, BAPE's products, services, or commercial activities, passing off BAPE's business as that of Nike, or engaging in any act or series of acts which, either alone or in combination, constitute unfair methods of competition with Nike and from otherwise interfering with or injuring Nike's Asserted Marks or the goodwill associated therewith;

d. Engaging in any act which is likely to dilute the distinctive quality of the Asserted Marks and/or injure Nike's business reputation;

e. Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (d) above.

3. An order that Nike is the exclusive owners of the Asserted Marks and that such marks are valid and protectable;

4. An order that BAPE be required to deliver to Nike for destruction any and all shoes, apparel, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in its possession, custody, or control bearing Nike's Asserted Marks, any marks substantially indistinguishable therefrom, or confusingly similar marks;

5. An order granting an award of damages suffered by Nike according to proof at the time of trial;

6.      An order that BAPE account to Nike for any and all profits earned as a result of BAPE's acts in violation of Nike's rights;

7.      An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

8.      An award of statutory damages pursuant to 15 U.S.C. § 1117(c);

9.      An order granting an award of punitive damages for the willful and wanton nature of BAPE's aforesaid acts under the common law;

10.     An order granting pre-judgment interest on any recovery by Nike;

11.     An order granting an award of Nike's costs, expenses, and reasonable attorneys' fees; and

12.     Granting such other and further relief as is just and proper.

Dated: January 25, 2023                    ARNOLD & PORTER KAYE SCHOLER LLP

By:  */s/ Michael J. Sebba*

Christopher J. Renk (*pro hac vice* to be filed)
  Chris.Renk@arnoldporter.com
Michael J. Harris (*pro hac vice* to be filed)
  Michael.Harris@arnoldporter.com
Aaron Bowling (*pro hac vice* to be filed)
  Aaron.Bowling@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4231
Telephone: (312) 583-2300

Bridgette C. Gershoni (*pro hac vice* to be filed)
  Bridgette.Gershoni@arnoldporter.com
Michael J. Gershoni (*pro hac vice* to be filed)
  Michael.Gershoni@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-6745

Michael Sebba
  Michael.Sebba@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 243-4000

*Attorneys for Plaintiff Nike, Inc.*