April 20, 2023

**VIA ECF**

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:      *Nike, Inc. v. USAPE LLC* **(1:23-cv-00660-PGG)**

Dear Judge Gardephe:

      Pursuant to the Notice of Pretrial Conference in the above-captioned case (Dkt. 8), Plaintiff Nike, Inc. ("Nike") and Defendant USAPE LLC ("BAPE") (collectively, the "Parties") submit this joint letter for the Initial Pretrial Conference scheduled for April 27, 2023, at 10:15 a.m.

      The Parties have agreed to a proposed Case Management Plan which is being filed concurrently with this letter.

      The Parties note that Defendant's Pre-Motion Letter requesting permission to file a motion to dismiss the Complaint is pending before the Court. (Dkt. 20). BAPE asserts that "Nike has failed to identify the elements of its asserted trade dress on which its claims are based and therefore failed to identify its purported trade dress with the requisite particularity." *Id.* Nike responds that it "specifically identifies each asserted trade dress with more than sufficient particularity to explain to BAPE and the Court which aspects of its product designs constitute its asserted trade dress" and with "more particularity than is required by the cases on which BAPE relies." (Dkt. 21). The Court's resolution of Defendants' Pre-Motion Letter may impact the Parties' proposed schedule in the Case Management Plan.

      The Parties also provide the following information requested by the Court:

**(1)    A brief description of the case, including the factual and legal bases for the claim(s) and defense(s)**

Nike's Statement:

      Nike filed this case because BAPE is intentionally copying Nike's federally registered trade dress rights in its iconic Air Force 1, Air Jordan 1, and Dunk sneakers. BAPE's unlawful conduct gives rise to claims for trademark infringement in violation of 15 U.S.C. §1114, false designation of origin / unfair competition in violation of 15 U.S.C. § 1125(a), common law trademark infringement and unfair competition, trademark

Hon. Paul G. Gardephe
April 20, 2023
Page 2

infringement under New York general business law § 133, and dilution under New York general business law § 360-L. Examples of BAPE's infringing sneakers are shown below.

| Nike's Trademarked Designs | Genuine Nike Products | BAPE's Infringing Products |
|---|---|---|
| U.S. Reg. No. 3,451,905 | Air Force 1 Low | BAPE STA |
| U.S. Reg. No. 3,451,906 | Air Force 1 Mid | BAPE STA Mid |
| U.S. Reg. No. 3,711,305 | Dunk Low | SK8 STA |
| U.S. Reg. No. 5,820,374 | Air Force 1 Midsole Design | BAPE STA |
| U.S. Reg. No. 6,368,694 | Air Jordan 1 High | COURT STA High |
| U.S. Reg. No. 6,368,691 | Air Jordan 1 Low OG | COURT STA |

Hon. Paul G. Gardephe
April 20, 2023
Page 3

Nike has spent decades building its rights and goodwill in the trade dress designs at issue in this case. As a result, Nike's trade dress designs in its iconic Air Force 1, Air Jordan 1, and Dunk sneakers are some of the world's most valuable trademarks. To protect those hard-earned rights, Nike has a legal obligation to stop copyists, such as BAPE, when their infringements pose a significant danger to Nike's rights.

BAPE's primary defense is laches. But BAPE's contention that it has acquired the right to pirate Nike's valuable trade dress under the doctrine of laches is meritless both legally and factually.

*First*, the law does not—and should not—provide safe harbor to bad actors such as BAPE that intentionally infringe on another's rights. *See, e.g.*, *Victorinox AG, Victorinox Swiss Army, Inc. v. B&F System, Inc.*, 114 F.Supp.3d 132 (quoting *Harlequin Enters. Ltd. v. Gulf & W. Corp.*, 644 F.2d 946, 950 (2d Cir.1981)) ("[I]t is well established that laches is not a defense against injunctive relief when the defendant intended the infringement.").

*Second*, even if the law allowed intentional infringers to avail themselves of this defense, the facts do not support a finding of laches in this case. BAPE introduced its first infringing footwear in the United States in 2005, the BAPE STA. But until recently, BAPE's sale of its infringing footwear in the United States was *de minimis* and inconsistent. For fifteen years, the presence of BAPE's infringing footwear in the United States resembled the Whac-A-Mole arcade game: infringing products appeared and then disappeared from the United States market for years; BAPE opened stores in the United States and then shuttered them a few years later; and BAPE was purchased by a Hong Kong fashion conglomerate that shifted BAPE's focus to markets outside the United States. And at all times prior to 2021, the quantity of BAPE's infringing footwear in the United States was never more than a small fraction of the millions of pairs Nike sells annually.

This all changed in 2021 when BAPE drastically increased the volume and scope of its infringement. After a five-year period where BAPE sold a redesigned version of its BAPE STA in low volumes, BAPE returned to its initial infringing BAPE STA design. At the same time, BAPE began rapidly expanding its physical presence in the United States, opening new brick-and-mortar stores in New York, Los Angeles, and Miami. Also in 2021, BAPE introduced various versions of the SK8 STA, the COURT STA, and the COURT STA High—all of which are copies of iconic Nike designs.

BAPE's copying is and always has been unacceptable to Nike, and because BAPE's infringements have recently grown to become a significant danger to Nike's rights, Nike must act now. Nike notified BAPE of its infringements and asked it to stop. BAPE refused to do so. Instead, BAPE continues to escalate its infringing activity.

To put an end to BAPE's unauthorized and unlawful use of Nike's trademarks, Nike filed its well-pleaded Complaint that easily satisfies the Second Circuit's pleading requirements for registered trade dress. Contrary to BAPE's assertions below, its request to file a motion to dismiss is premised on the legally erroneous view that Nike must do

Hon. Paul G. Gardephe
April 20, 2023
Page 4

more than it has already done to plead that its *registered* trade dress is protectable under the Lanham Act. In doing so, BAPE ignores that the expert examiners at the USPTO already determined that Nike's asserted trade dress is sufficiently articulated to provide the public with notice of the exact parameters of its claimed rights, and that Nike's registered trade dress is entitled to a presumption of validity and protectability at every stage of the case, including at the pleading stage.

Instead, rather than respond to Nike's charge of infringement in a formal Answer to its well-pleaded Complaint, BAPE now provides a patchwork of purported "reasons" below as to why it believes Nike's claims will fail. These reasons similarly lack merit.

First, BAPE's mere attorney argument that the addition of various marks on top of Nike's protected designs "prevents" confusion is misplaced here. Nike does authorized collaborations with various third parties. As such, the addition of BAPE's marks on top of Nike's own iconic designs solidifies Nike's concerns that consumers will falsely associate BAPE with Nike.

Second, BAPE's assertions regarding the strength of Nike's federally registered Air Force 1 Low registration in view of a prior and unrelated litigation ignores that the trade dress it characterizes as "feeble" has been registered with the USPTO since 2008 and has achieved incontestability status—affording it greater protection under the law.

BAPE's remaining assertions regarding Nike's "litigation strategy" and what consumers have been "conditioned" to do is pure conjecture and should be disregarded.

BAPE's Statement:

Nike's claims will fail for at least four reasons.  First, Nike has failed to specify what design elements comprise its trade dress and cannot establish that the look of its sneakers, apart from its NIKE mark and swoosh logo, are distinctive.  Second, Nike waited twenty-three years to file this lawsuit and that delay precludes action by Nike now.  Third, Bape's sneakers feature several of its own trademarks the inclusion of which prevents marketplace confusion.  Fourth, the U.S. marketplace is full of third-party sneakers that feature the same characteristics Nike is suing over here, and therefore Nike's rights in its trade dress, if any, are thin.  Moreover, consumers purchasing sneakers in such a crowded market have been conditioned not to be confused by the mere appearance of those sneakers.

*Unspecified Trade Dress Elements*

As set forth in Bape's February 17 pre-motion letter, Nike's allegations in the Complaint fall short of what is required for a cognizable trade dress claim.  Nike does not plead *any* of the elements that make up its Air Force 1, Dunk, or Air Jordan trade dresses (the "Asserted Marks").  Instead, it provides only the registration numbers associated with the Asserted Marks (the "Asserted Registrations"), the drawings attached to the Asserted Registrations, and photographs of certain shoes bearing the Asserted Marks.  While the descriptions found in Nike's trade dress registrations pay lip service to detail, in fact, they

merely identify various parts of a sneaker but do not describe what is distinctive about each of those parts. As the cases cited in Bape's pre-motion letter establish, such "laundry lists" of components are insufficient to sustain a trade dress claim.

*Laches*

While Nike claims that is has spent decades developing its alleged rights, the fact is that it has spent decades fully aware that Bape and others have been selling sneakers that Nike now claims to be infringing. Specifically, BAPE has been selling sneakers with the attributes at issue here since 2000, but Nike waited twenty-three years to file this lawsuit. Despite Nike's mischaracterization of Bape's sale of its sneakers in the United States over the past twenty-three years, the facts will show the since 2000 Bape has sold its Bapesta sneakers in the United States and has continuously operated Bape stores in the United States through which it sold those sneakers.

Nike alleged that the four Bape sneaker styles below infringe its trade dress rights. In the first column below is a Bape sneaker that is at issue. In the second column is the Nike trade dress on which Nike relies. In the third column are the earlier versions of Bape sneakers that possess the elements that Nike claims are infringing along with the time period during which those versions were sold in the U.S.

| Accused Sneaker | Assessment | Products Giving Rise to Laches |
|---|---|---|
| High Cut Version 4<br>On Sale from 2019-Present | Nike Reg. No. 5,820,374 | Version 1<br>On Sale from 2000-2008<br><br>Version 2<br>On Sale from 2008-2015<br><br>High Cut Version 3<br>On Sale from 2016-2021 |
| High Cut Version 4<br>On Sale from 2019-Present | 1. Nike Reg. No. 3, 451, 906:<br><br>2. Nike Reg. No. 3, 451, 907: | Version 1<br>On Sale from 2007-2008 |

| Accused Sneaker | Assessment | Products Giving Rise to Laches |
|---|---|---|
|  | *Nike would need to dissect two different trade dress registrations to fully cover all the elements that the High Cut Version 4 may have in common with the allegedly protectable elements of Nike's sneakers.* | Version 2<br>On Sale from 2008-2016<br><br>High Cut Version 3<br>On Sale from 2016-2021 |
| Low Cut Version 4<br>On Sale from 2019-Present | Nike Reg. No. 5,820,374 | Version 1<br>On Sale from 2000-2008<br><br>Version 2<br>On Sale from 2008-2015 |

Hon. Paul G. Gardephe
April 20, 2023
Page 8

| Accused Sneaker | Assessment | Products Giving Rise to Laches |
|---|---|---|
| | | Version 3<br>On Sale from 2016-2021 |
| Low Cut Version 4<br>On Sale from 2019-Present | Nike Reg. No. 3,451,905 | Version 1<br>On Sale from 2000-2008<br><br>Version 2<br>On Sale from 2008-2015<br><br>High Cut Version 3<br>On Sale from 2016-2021 |

Hon. Paul G. Gardephe
April 20, 2023
Page 9

| Accused Sneaker | Assessment | Products Giving Rise to Laches |
|---|---|---|
|  |  |  |
| Low Cut Version 3<br>On Sale from 2016-2021 | Nike Reg. No. 3,451,905 | Version 1<br>On Sale from 2000-2008<br><br>Version 2<br>On Sale from 2008-2015 |

Nike now claims that "until recently, Bape's sale of its infringing footwear in the United States was *de minimis* . . .." But Nike's own conduct during Bape's decades-long sale of its sneakers undermines that newly-minted mischaracterization. In October 2009, Nike's in-house counsel and Nike's V.P. of footwear flew to Japan twice to meet with BAPE's leadership to object to BAPE's sneaker designs as purportedly infringing Nike's trade dress. Following these two meetings, Nike presented BAPE with a proposed agreement that would require BAPE to stop selling its BAPESTA sneakers. On October 22, 2009, BAPE rejected this agreement in an email that read:

> We appreciate your efforts in coming over to Japan to discuss and present the license agreement in person. On careful review the license is not something we can rush to agree to since we do not perceive that Nike would have, at this late date, if at all, any viable or actionable claims against Nowhere/BAPE. Perhaps we are overlooking something - so in the interest of mutual cooperation, we would be more than amenable to reconsider our position, provided that you expressly spell out for us what claims Nike believes that it could advance against Nowhere/BAPE. Once we receive this information, we will be able to more fully consider your offer of a license. look forward to hearing from you.

Even after being confronted with BAPE's assessment that Nike had no "viable or actionable claims" and despite being invited to "spell out what claims Nike believes that it could advance," Nike failed to provide the specifics of its trade dress claims and dropped the matter in 2009. Three years later, in 2012, Nike introduced its new in-house counsel to BAPE indicating that he wanted to further discuss Nike's concerns regarding the BAPESTA sneakers. But Nike's new in-house counsel never contacted BAPE. How *de minimis* could Bape's sales have been to have caused top Nike executives to fly twice to Japan in 2009 and to have followed up again in 2012 to introduce Nike's new in-house counsel to Bape executives?

*BAPE, A BATHING APE, BAPRESTA, and 93Marks, Ape Logo and Shooting Star Logo*

As illustrated below, Bape's sneakers feature several marks that prevent consumers from associating its sneakers with the Nike brand. These include the word marks BAPE, A BATHING APE and BAPESTA, the letter mark 93, the Ape Logo and the Shooting Star logo. Because Bape is an extremely successful and widely recognized brand whose footwear has been the subject of widespread media and consumer attention for decades, and because the Bape marks that appear on Bape's footwear have been long used and are widely recognized, it is folly for Nike to suggest that consumers encountering Bape sneakers will somehow think they are the product of collaboration with Nike.



*Widespread Use of Designs Like Nike's*

The U.S. sneaker market is crowded with many sneaker brands that embody the features Nike is attempting to monopolize through this lawsuit. The existence of these sneakers in the

marketplace undermines Nike's purported rights in the very appearance of its sneakers and, even if any such rights exist, eliminates the risk that consumers will be confused into thinking Bape's sneakers come from Nike.  This is because for decades such consumers have been conditioned and have grown accustomed to distinguishing Nike's sneakers from those of the many other brands that may share a similar appearance with Nike's sneakers.

Bape recently discovered that Nike granted at least one of these brands immunity from suit in order to save its feeble Air Force 1 trade dress registration from cancellation.  Specifically, in 2009 Nike sued Already LLC alleging that two of Already's athletic shoes violated Nike's Air Force 1 trademark.  Already counterclaimed, challenging the validity of Nike's Air Force 1 trade dress registration.  Apparently fearing it was about to lose one if its implements of monopoly, Nike issued a covenant not to sue,[1] promising not to raise any trademark or unfair competition claims against Already's footwear based on the Air Force 1 trade dress.  Despite this, Already persisted in its efforts to cancel the Air Force 1 registration.  But in 2013, the United States Supreme Court ruled that the covenant not to sue mooted Already's counterclaim.  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 101 (2013).  And so, because Nike changed its tune regarding the significance of Already's sales, Nike's trade dress registration has lived on to loom over other competitors for another decade.

**(2)     Any contemplated motions**

Joint:

The Parties contemplate filing a joint motion for entry of a protective order governing the use and disclosure of confidential information in this case.

Nike:

Nike contemplates filing a motion for summary judgment or partial summary judgment.

BAPE:

Bape is hopeful that the Court will grants its request to file a motion to dismiss the Complaint and will thereafter grant that motion.  If Nike's suit instead survives a Motion to Dismiss, Bape will file a motion for summary judgment.

---

[1] The text of Nike's 2008 covenant not to sue is both revealing and foreshadowing.  In the preamble Nike wrote "Already's actions . . . no longer infringe or dilute the NIKE Mark at a level sufficient to warrant the substantial time and expense of continued litigation."  This sudden change in position illustrates Nike's litigation strategy whereby it characterizes the sales of competitors' sneakers as a great threat when doing so suits Nike, but when doing so is uncomfortable or inconvenient to Nike, it instead declares the sale of those same sneakers to be inconsequential and not worth Nike's time and expense.

**(3)      The prospect for settlement**

The parties engaged in settlement discussions prior to Nike's filing of this action and continue to discuss a potential resolution.

Respectfully submitted,

By:  /s/ Michael J. Gershoni

Christopher J. Renk (admitted *pro hac vice*)
Chris.Renk@arnoldporter.com
Michael J. Harris (admitted *pro hac vice*)
Michael.Harris@arnoldporter.com
Aaron Bowling (admitted *pro hac vice*)
Aaron.Bowling@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4231
Telephone: (312) 583-2300
Facsimile: (312) 583-2360

Bridgette C. Gershoni (admitted *pro hac vice*)
Bridgette.Gershoni@arnoldporter.com
Michael J. Gershoni (admitted *pro hac vice*)
Michael.Gershoni@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-6745
Facsimile: (202) 942-5999

Michael J. Sebba
Michael.Sebba@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

*Counsel for Plaintiff Nike, Inc.*

By:  /s/ Kieran G. Doyle

Kieran G. Doyle
KGD@cll.com
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, New York 10036-1525
Telephone: (212) 790-9261
Facsimile: (212) 575-0671

*Counsel for Defendant USAPE LLC*