**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NIKE, INC.,

               Plaintiff,

     v.

USAPE LLC,

               Defendant.

Case No. 1:23-cv-00660-PGG

**NIKE'S OPPOSITION TO DEFENDANT USAPE LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    RELEVANT LEGAL STANDARDS ................................................................... 5

    A.   Trade Dress and Federal Registration................................................................ 5

        1.   Registration Requirement:  A Trade Dress Owner Must Articulate Its Trade Dress With Sufficient Particularity During the Examination Process ................................. 6

        2.   Registration Requirement:  A Trade Dress Owner Must Establish Its Trade Dress is Distinctive During the Examination Process ............................................................ 7

        3.   Registration Requirement:  A Trade Dress Owner Must Establish Its Trade Dress is Non-Functional ................................................................................................. 7

        4.   Nike Satisfied All of the Above Requirements for the Asserted Trade Dress........... 8

    B.   Pleading Requirements for Trade Dress Infringement ................................................ 8

III.   NIKE'S COMPLAINT SATISFIES THE PLEADING REQUIREMENTS FOR REGISTERED TRADE DRESS AS WELL AS THE ADDITIONAL PLEADING REQUIREMENTS FOR UNREGISTERED TRADE DRESS ....................................... 11

    A.   Nike's Complaint Contains Well-Pleaded Allegations That Each Asserted Trade Dress is Entitled to Protection and That Defendant's Knockoffs Create a Likelihood of Confusion ................................................................................................. 11

    B.   BAPE Asks This Court to Commit Legal Error by Applying the Additional Pleading Requirements for Unregistered Trade Dress to Nike's Claims Asserting Registered Trade Dress ................................................................................................. 12

        1.   The Second Circuit Does Not Require a Plaintiff Asserting Registered Trade Dress to Articulate in Its Complaint Which Features of Its Registered Trade Dress Are Distinctive and How They Are Distinctive ................................................................ 12

        2.   Decisions From This District, Including Heller and E. Remy Martin, Do Not Support Requiring a Plaintiff Asserting Registered Trade Dress to Articulate in Its Complaint Which Features of Its Registered Trade Dress Are Distinctive and How They Are Distinctive ................................................................................................. 14

        3.   BAPE's Assertion That Nike Has a Higher Pleading Standard for Its Registered Trade Dress is Unsupported and Contrary to Second Circuit Precedent ................ 19

        4.   Although not Required, Nike's Complaint Exceeds What Courts Require at the Pleading Stage for Unregistered Trade Dress ........................................................ 20

IV.   CONCLUSION................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Cases**

*BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*,
    408 F. Supp. 3d 508 (S.D.N.Y. 2019) ................................................................. 8, 11, 18, 20

*Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83 (S.D.N.Y. 2022) ........................ 18

*Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No. 1:20-CV-07899-PAC, 2021 WL
    1758881 (S.D.N.Y. May 4, 2021)........................................................................................ 24

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*  348 F. Supp. 2d 217 (S.D.N.Y. 2004).......... 15

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,
    696 F.3d 206 (2d Cir. 2012) ........................................................................... 6, 8, 9, 12, 19

*E. Remy Martin & Co. v. Sire Spirits LLC*,
    2022 WL 94882 (S.D.N.Y. Jan. 10, 2022.............................................................................. 17

*Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993 (2d Cir. 1997) ...................... 5

*Heller Inc. v. Design Within Reach, Inc.*, No. 09CIV1909(JGK), 2009 WL 2486054
    (S.D.N.Y. Aug. 14, 2009) ...................................................................................................... 14

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995).......................... 14

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
    113 F.3d 373 (2d Cir. 1997) ......................................................................... 8, 9, 10, 11, 13

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
    799 F.2d 867 (2d Cir. 1986) ........................................................................... 1, 6, 8, 9, 12, 24

*Nat'l Lighting Co. v. Bridge Metal Indus., LLC*,
    601 F. Supp. 2d 556 (S.D.N.Y. 2009) ........................................................................... 23, 24

*Nat'l Hockey League v. Hockey Cup LLC*, 2019 WL 130576 (S.D.N.Y. Jan. 8, 2019) .............. 19

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016)........................................................ 22

*Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389 (2d Cir. 2003) ................... 9, 10, 14

*Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F.Supp.3d 429 (S.D.N.Y. 2016) ............. 17, 18

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)....................................................... 14

*Victorinox AG v. B&F Sys., Inc.*,
    709 F. App'x 44 (2d Cir. 2017), as amended (Oct. 4, 2017).................................................... 8

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001)........................................ 9, 10, 13

**Statutes**

15 U.S.C. § 1127........................................................................................................................ 5

**Other Authorities**

1 McCarthy on Trademarks and Unfair Competition § 8:7............................................................ 6

TMEP § 1202.02(a)(iv)-(v) ................................................................................. 8

TMEP § 1202.02(b) ............................................................................................. 7

TMEP § 1202.02(b)(i) ......................................................................................... 7

TMEP § 1202.02(c)(i) ......................................................................................... 6

TMEP § 1212 ....................................................................................................... 7

TMEP § 1212.03 ............................................................................................ 7, 10

**<u>Regulations</u>**

37 C.F.R. §2.52(b)(4)........................................................................................... 6

## I.    INTRODUCTION

Nike, Inc. ("Nike") filed this lawsuit because USAPE LLC ("BAPE") is marketing and selling near-verbatim copies of Nike's Air Force 1 ("AF1"), Air Jordan 1 ("AJ1"), and Dunk sneakers. BAPE's conduct constitutes trademark infringement, false designation of origin, unfair competition, and trademark dilution. The damage to Nike is considerable. BAPE's conduct dilutes Nike's designs and it confuses consumers as to the source, origin, affiliation, and sponsorship of the products. If not stopped, BAPE's conduct will undermine Nike's control over its brand, business reputation, and associated goodwill, which Nike has spent decades building.

Nike first introduced its AF1 (Mid & Low), AJ1 (High & Low OG), and Dunk Low sneakers over thirty years ago. Through Nike's efforts over the course of many decades, these sneakers have become some of the most iconic sneakers of all time, and their designs are well-recognized by consumers as source identifiers for the high-quality products originating exclusively from Nike. Nike, as a result, owns intellectual property rights in the AF1 (Mid & Low), AJ1 (High & Low OG), and Dunk Low sneaker designs; namely, trade dress rights in the designs.

To establish that those rights are protectable, Nike applied for and obtained trade dress registrations from the United States Patent and Trademark Office ("USPTO"). Nike applied for and obtained U.S. Registration No. 3,451,905 for the design of the AF1 Low sneaker; U.S. Registration No. 3,451,906 for the design of the AF1 Mid sneaker; U.S. Registration No. 5,820,374 for the design of the AF1 midsole; U.S. Registration No. 3,711,305 for the design of the Dunk Low sneaker; U.S. Registration No. 6,368,694 for the design of the AJ1 High sneaker; and U.S. Registration No. 6,368,691 for the design of the AJ1 Low OG sneaker (collectively, the "Asserted Trade Dress."). Federally registered trade dress rights—like Nike's Asserted Trade Dress—are not only presumed protectable, but "should be afforded the utmost protection." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).

Profiting off Nike's designs, reputation, and goodwill, BAPE promotes and sells sneakers that bear near-verbatim copies of Nike's Asserted Trade Dress. The table below shows Nike's Asserted Trade Dress, examples of genuine Nike sneakers bearing the Asserted Trade Dress, and examples of BAPE's infringing sneakers.

| Nike's Trademarked Designs | Genuine Nike Products | BAPE's Infringing Products |
|---|---|---|
| U.S. Reg. No. 3,451,905 | Air Force 1 Low | BAPE STA |
| U.S. Reg. No. 3,451,906 | Air Force 1 Mid | BAPE STA Mid |
| U.S. Reg. No. 3,711,305 | Dunk Low | SK8 STA |
| U.S. Reg. No. 5,820,374 | Air Force 1 Midsole Design | BAPE STA |
| U.S. Reg. No. 6,368,694 | Air Jordan 1 High | COURT STA High |

|  |  |  |
|---|---|---|
| U.S. Reg. No. 6,368,691 | Air Jordan 1 Low OG | COURT STA |

To state its claim for infringement at the pleading stage, Nike needed to plead facts that, if accepted as true, plausibly show that (i) its trade dress is entitled to protection, and (ii) BAPE's products infringe on Nike's trade dress by creating a likelihood of confusion. Nike's allegations in its Complaint easily satisfy that standard. First, Nike pled that its registered Asserted Trade Dress is entitled to protection by incorporating the certificates of registration for those trade dress rights into the Complaint. A certificate of registration is prima facie evidence that the mark is protectable. Second, Nike pled that the proliferation of BAPE's knockoff sneakers created both a likelihood of confusion and actual confusion in the marketplace, and BAPE does not challenge the sufficiency of those allegations in its motion.

BAPE, nonetheless, filed its motion to dismiss incorrectly arguing that Nike needed to do more to establish that the Asserted Trade Dress "merits protection."[1] Specifically, BAPE incorrectly asserts that Nike was required to include in its Complaint "a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive[.]"  Dkt. 26

---

[1] Nike notes that despite BAPE's filing of this motion to dismiss, both parties have been proceeding forward with the Complaint as if the parties are no longer at the pleading stage.  The parties have (i) conducted a Fed. R. Civ. P. 26(f) conference, (ii) served initial disclosures, and (iii) served and responded to requests for production and interrogatories.  In fact, BAPE has served seventy-five (75) requests for production over two separate sets of requests and thirteen (13) interrogatories directed to both Nike's claim of infringement and what appear to be various affirmative defenses and/or counterclaims that BAPE has yet to disclose to Nike because it has not filed an answer.  In addition to the reasons discussed below, the Court should require BAPE to respond to Nike's well-pleaded allegations in view of the fact that the parties have already been proceeding to litigate this case on the merits.

3

("Mot."), 4.[2] But that is a pleading requirement for *unregistered* trade dress, not *registered* trade dress. Federally registered trade dress like Nike's Asserted Trade Dress is afforded a presumption of protectability, which includes a presumption of distinctiveness. Nike is entitled to rely on that presumption at every stage of the case, including in its Complaint. BAPE has the burden of overcoming the presumption, which it can attempt to do on summary judgment or at trial, but not at the pleading stage through a motion to dismiss. Indeed, BAPE has not, and cannot, cite any legal authority for disregarding this presumption at the pleading stage or for applying the pleading requirements for unregistered trade dress to Nike's federally registered Asserted Trade Dress.

In any event, even if the Court were to apply the pleading requirements for unregistered trade dress to Nike's registered Asserted Trade Dress, which would be legal error, Nike's allegations in its Complaint satisfy those requirements, too. Nike's registrations for its Asserted Trade Dress, which Nike incorporated into the Complaint, articulate the distinctive combination of elements that comprise the Asserted Trade Dress through detailed written descriptions and corresponding diagrammed illustrations that include solid and dotted lines indicating the portions of the designs claimed as part of the Asserted Trade Dress. The level of detail Nike provided in those registrations exceeds the level of detail courts have required at the pleading stage for unregistered trade dress.

For these reasons, as set forth in further detail below, Nike requests that the Court deny BAPE's motion to dismiss and require BAPE to answer Nike's well-pleaded allegations.

---

[2] BAPE devotes much of its brief to inaccurate allegations regarding its laches defense. *See, e.g.,* Mot., 1-3. BAPE's laches defense is not at issue in this motion to dismiss. Nike, therefore, will not respond to BAPE's inaccurate and incomplete allegations here. Nike's Complaint provides an accurate summary of the history of this dispute, and Nike will elaborate on that history at the appropriate time as provided in the Court's scheduling order.

## II.      RELEVANT LEGAL STANDARDS

Nike asserts federally registered trade dress in this case, which is entitled to a presumption of protectability and distinctiveness, not unregistered trade dress, which is entitled no presumptions. BAPE ignores the differences between registered and unregistered trade dress, including the differences in pleading requirements for the two, under Second Circuit law.  In short, BAPE asks this Court to commit legal error by applying the pleading requirements for unregistered trade dress to Nike's claims asserting registered trade dress. Below Nike clarifies the relevant legal standards.

### A.      Trade Dress and Federal Registration

A trademark is any word, name, symbol, or design, or any combination thereof, used in commerce to identify and distinguish the goods of one manufacturer or seller from those of another and to indicate the source of the goods. 15 U.S.C. § 1127. A product's design or appearance, or a portion of a product's design or appearance, can serve as a trademark. *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 999 (2d Cir. 1997). That type of trademark is called a trade dress. *Id*. Nike asserts trade dress in this case; *i.e.*, trade dress in the designs of its iconic AF1 (Mid & Low), AJ1 (High & Low OG), and Dunk Low sneakers.

The Lanham Act is the federal statute that governs trademarks. It provides for a national system of trademark registration and protects trademark owners against the use of similar marks by others if such use is likely to cause consumer confusion. The Lanham Act protects both registered trademarks and unregistered trademarks. In other words, a trademark owner may attempt to register its trademark with the USPTO, but it is not required to do so.

A trademark owner, like Nike, may attempt to register its trademark with the USPTO because federal registration entitles the owner to several benefits and presumptions in the event of litigation, including presumptions that the registered trademark is valid and protectable, *i.e.*, non-

generic, non-functional, and has acquired distinctiveness. *See, e.g.*, *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216, n.10 (2d Cir. 2012) ("A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (i.e., *protectable*), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce.") (emphasis added). Moreover, a registered trademark is "presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).

The owner of a registered trade dress, like Nike in this case, is entitled to those presumptions because its trade dress undergoes a thorough examination by the experts at the USPTO before it is awarded registration. The examination and the registration requirements at the USPTO are neither cursory nor perfunctory for at least the reasons described below.

1.  *Registration Requirement:  A Trade Dress Owner Must Articulate Its Trade Dress With Sufficient Particularity During the Examination Process*

To obtain a federal trade dress registration, an applicant must articulate its trade dress with sufficient particularity in its application to the USPTO. The applicant must articulate and define "the elements of the trade dress so that the public will know the exact parameters of the claimed exclusive right covered by the registration." 1 McCarthy on Trademarks and Unfair Competition § 8:7 (cleaned up). The drawings accompanying the application "may not contain elements that are not part of the mark (*i.e.*, matter that is functional or incapable of trademark significance)." Trademark Manual of Examining Procedure ("TMEP") § 1202.02(c)(i) (cleaned up). And, if the mark comprises a portion of a product's design, "solid lines must be used on the drawing to show the elements of the product design that are claimed as part of the mark, and broken or dotted lines must be used to indicate the portions that are not claimed as part of the mark." *Id.* (citing 37 C.F.R.

6

§2.52(b)(4)) (cleaned up). If the nature or scope of the trade dress is unclear to the examiner at the USPTO, the examiner may demand additional description. *See id.*

        2.     *Registration Requirement:  A Trade Dress Owner Must Establish Its Trade Dress is Distinctive During the Examination Process*

After sufficiently articulating its trade dress, the applicant must next "establish[] that the mark has acquired distinctiveness under §2(f) of the Trademark Act." TMEP § 1202.02(b)(i).[3] To do so, the applicant must show that "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." TMEP § 1212.03. "In applications seeking registration of marks comprising product design, the examining attorney must refuse registration on the ground that the proposed mark is not inherently distinctive unless the applicant claims that the mark has acquired distinctiveness under §2(f) and provides sufficient evidence to show that the mark has acquired distinctiveness." TMEP § 1202.02(b)(i). "Applicants face a heavy burden in establishing acquired distinctiveness in an application to register trade dress."  TMEP § 1202.02(b)(i).

        3.     *Registration Requirement:  A Trade Dress Owner Must Establish Its Trade Dress is Non-Functional*

Once the applicant has established its trade dress has acquired distinctiveness, the examiner at the USPTO reviews the applied-for-mark to determine whether it claims functional matter. If the examiner believes the trade dress is functional, it "must establish a prima facie case that the proposed trade dress mark sought to be registered is functional" by examining whether (i) the existence of a utility patent that discloses the utilitarian advantages of the design sought to be registered; (ii) advertising by the applicant that touts the utilitarian advantages of the design; (iii) facts pertaining to the availability of alternative designs; and (iv) facts pertaining to whether the

---

[3] The terms "acquired distinctiveness" and "secondary meaning" are synonymous and interchangeable.  *See* TMEP § 1212.

design results from a comparatively simple or inexpensive method of manufacture.  *See* TMEP §

1202.02(a)(iv)-(v). The burden then shifts to the applicant to present "competent evidence" to rebut

the examining attorney's prima facie case of functionality. *See* TMEP  § 1202.02(a)(iv).

4.     *Nike Satisfied All of the Above Requirements for the Asserted Trade Dress*

The USPTO registers a trade dress, and issues a registration certificate, only if the trade

dress owner can clear the three hurdles described above. Nike did that for its Asserted Trade Dress

in this case. That is, for each Asserted Trade Dress during the examination process at the USPTO,

Nike articulated the Asserted Trade Dress with sufficient particularity, established the Asserted

Trade Dress is distinctive, and established the Asserted Trade Dress is non-functional. The

examiners at the USPTO registered and issued registration certificates for the Asserted Trade

Dress. Each Asserted Trade Dress, therefore, is entitled to presumptions that it is valid and

protectable, *i.e.*, non-generic, non-functional, and has acquired distinctiveness. *See, e.g.*, *Christian

Louboutin S.A.*, 696 F.3d at 216, n. 10; *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 871. And,

importantly, each Asserted Trade Dress is entitled to those presumptions at every stage of this

case, including at the pleading stage. *See id.*

**B.     Pleading Requirements for Trade Dress Infringement**

To state a claim for trade dress infringement, a plaintiff must plead facts that, if accepted

as true, show "(a) that its trade dress is entitled to protection under the [Lanham] Act, and (b) that

the defendant's dress infringes on the plaintiff's dress by creating a likelihood of confusion." *E.g.*,

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377 (2d Cir. 1997); *BBK Tobacco

& Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019) (citing *Victorinox

AG v. B&F Sys., Inc.*, 709 F. App'x 44, 47 (2d Cir. 2017), as amended (Oct. 4, 2017)).

If the plaintiff's trade dress is registered, like Nike's Asserted Trade Dress in this case, the

plaintiff may satisfy the first prong of the pleading requirements by producing its certificate of

registration. *See BBK Tobacco & Foods, LLP*, 408 F. Supp. 3d at 520*; see also Victorinox AG*, 709 F. App'x at 47 ("As to the first stage, '[a] certificate of registration with the [USPTO] is prima facie evidence that the mark is registered and valid (i.e., *protectable*)[.]'") (emphasis added). This makes sense because, by obtaining the registration, the plaintiff has already articulated its trade dress with sufficient particularity, established its trade dress is distinctive, and established its trade dress is non-functional. Moreover, the plaintiff is afforded the presumption that its trade dress is entitled to protection under the Lanham Act.  *See Christian Louboutin*, 696 F.3d at 216, n. 10; *Lois Sportswear,* 799 F.2d at 871.

In contrast, if the plaintiff's trade dress is not registered, the plaintiff must do more to satisfy the first prong of the pleading requirements. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) ("[T]he general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)."); *see generally Landscape Forms, Inc.*, 113 F.3d 373 (discussing whether an unregistered trade dress "qualifies for protection" under the Lanham Act).

First, the plaintiff of an unregistered trade dress must articulate its unregistered trade dress with sufficient particularity in its complaint—just like a plaintiff of a registered trade dress did at the USPTO to obtain its registration. *See Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003) (citing *Landscape Forms, Inc.*, 113 F.3d at 381); *Yurman Design, Inc.* 262 F.3d at 114, 116 ("Yurman has not registered what it seeks to protect as a trademark in this case….[W]e hold that a plaintiff seeking to protect its trade dress in a line of products must articulate the design elements that compose the trade dress."); *see also* Sec. II.A.1, *supra*. For example, in *Landscape Forms, Inc.*, the court held that a plaintiff seeking to protect an unregistered trade dress must articulate "the specific elements which comprise its distinct dress" in part because

9

a failure to identify which aspects of its product designs "merit protection" may indicate that the "claimant seeks protection for an unprotectable style[.]" *Landscape Forms, Inc.*, 113 F.3d at 381.

Second, the plaintiff must sufficiently allege in its complaint that its unregistered trade dress has acquired distinctiveness—just like a plaintiff of a registered trade dress did at the USPTO to obtain its registration. *See Sherwood 48 Assocs.*, 76 F. App'x at 391; *see also* Sec. II.A.2, *supra*. The inquiry conducted by the Second Circuit and the USPTO are the same in this regard. *Compare* TMEP § 1212.03 (requiring a showing that "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.") *with Yurman Design, Inc.*, 262 F.3d at 115 ("The product design plaintiff must always make the" showing that "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself[.]").

Third, the plaintiff must sufficiently allege in its complaint that its unregistered trade dress is not functional—just like a plaintiff of a registered trade dress did at the USPTO to obtain its registration. *See Sherwood 48 Assocs.*, 76 F. App'x at 391; *see also* Sec. II.A.3, *supra*. As with acquired distinctiveness, the Second Circuit and the USPTO apply the same standards for determining whether a trade dress is functional. *See, e.g., Yurman Design, Inc. v. PAJ, Inc.*, at 116 ("A final doctrinal hurdle is the congressionally-imposed requirement that a plaintiff prove that an unregistered trade dress is not functional.") (cleaned up).

These additional pleading requirements for an *unregistered* trade dress make sense because the plaintiff in this scenario has not undergone an examination process at the USPTO where it articulated its trade dress with sufficient particularity, established its trade dress is distinctive, and established its trade dress is non-functional. Such a plaintiff does not have a registration certificate and is not afforded a presumption that its trade dress is entitled to protection under the Lanham

Act. The plaintiff in this scenario must allege facts that, if accepted as true, plausibly show that its trade dress is entitled to protection under the Lanham Act. Put another way, the plaintiff in this scenario must allege facts that, if accepted as true, show exactly what the plaintiff of a registered trade dress already established at the USPTO to obtain registration.

## III.   NIKE'S COMPLAINT SATISFIES THE PLEADING REQUIREMENTS FOR REGISTERED TRADE DRESS AS WELL AS THE ADDITIONAL PLEADING REQUIREMENTS FOR UNREGISTERED TRADE DRESS

### A.   Nike's Complaint Contains Well-Pleaded Allegations That Each Asserted Trade Dress is Entitled to Protection and That Defendant's Knockoffs Create a Likelihood of Confusion

Nike's allegations in its Complaint easily satisfy the Second Circuit's pleading requirements for registered trade dress. *First*, Nike sufficiently pled that its registered Asserted Trade Dress is entitled to protection under the Lanham Act by incorporating the certificates of registration for those trade dress rights into the Complaint. *See* Dkt. 1 ("Compl."), ¶¶ 24, 30, 37, Exs. 1-6; *see also Victorinox AG*, 709 F. App'x at 47 ("As to the first stage, '[a] certificate of registration with the [USPTO] is prima facie evidence that the mark is registered and valid (i.e., *protectable*)[.]'") (emphasis added); *BBK Tobacco & Foods, LLP*, 408 F. Supp. 3d at 520 ("A plaintiff may satisfy this standard by producing a valid certificate of registration.").

*Second*, Nike sufficiently pled that the proliferation of BAPE's knockoff sneakers created both a likelihood of confusion and actual confusion in the marketplace. *See Landscape Forms, Inc.*, 113 F.3d at 375 (2d Cir. 1997) ("When evaluating [trade dress] claims, courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin."). In fact, BAPE does not challenge the sufficiency of Nike's allegations regarding this second prong of the pleading requirements.

Accordingly, Nike has sufficiently pled infringement of its registered trade dress.

11

**B.      BAPE Asks This Court to Commit Legal Error by Applying the Additional Pleading Requirements for Unregistered Trade Dress to Nike's Claims Asserting Registered Trade Dress**

BAPE incorrectly argues that Nike must additionally allege an articulation of "which of its trade design elements are distinctive and how they are distinctive." Mot., 7. In support, BAPE presents three flawed arguments that urge the Court to ignore the distinctions between registered and unregistered trade dress. First, BAPE incorrectly argues that "courts reject trade dress claims [for federally registered trade dress] where plaintiffs have failed to include in the complaint 'a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive.'" Mot., 4. Second, BAPE incorrectly argues that "[t]he standard for pleading trade dress protection is particularly high for [federally registered] product configuration trade dress." *Id.*, 5. Third, BAPE incorrectly asserts that "Nike does not identify any elements of its trade dress." *Id.*, 7.  Nike addresses each of these flawed arguments in turn below.

1.      *The Second Circuit Does Not Require a Plaintiff Asserting Registered Trade Dress to Articulate in Its Complaint Which Features of Its Registered Trade Dress Are Distinctive and How They Are Distinctive*

The Second Circuit's treatment of federally registered trade dress rights at all stages of the case, including at the pleading stage, is clear. "A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (i.e., *protectable*)[.]" *See, e.g.*, *Christian Louboutin S.A.*, 696 F.3d at 216, n.10; *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 871 ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection.").

BAPE fails to cite a single Second Circuit case that supports its request to ignore this presumption or would otherwise require a plaintiff asserting registered trade dress to articulate in its complaint which features of its registered trade dress are distinctive and how they are distinctive. In fact, BAPE fails to cite a single Second Circuit case that even addresses the pleading requirements for *registered* trade dress at all. BAPE instead relies on three decisions from the

Second Circuit that are irrelevant to the facts of this case: *Landscape Forms* (2d Cir. 1997), *Yurman Design, Inc.* (2d Cir. 2001), and *Sherwood 48 Assocs.* (2d Cir. 2003).

Specifically, neither *Landscape Forms* nor *Yurman Design, Inc.* were raised in the context of a motion to dismiss the pleadings under Rule 12—like BAPE's present Motion. Rather, *Landscape Forms* involved an appeal from a preliminary injunction and *Yurman Design, Inc.* involved an appeal from a judgment following a jury trial.

Relatedly, neither *Landscape Forms, Yurman Design, Inc.,* nor *Sherwood 48 Assocs.,* addressed the pleading requirements for *registered* trade dress. To the contrary, the Second Circuit in *Landscape Forms* unambiguously addressed the question of "under what circumstances the law of trade dress appropriately *protects* industrial design" for an *unregistered* trade dress—not registered trade dress. *Landscape Forms*, 113 F.3d at 375 (2d. Cir. 1997) (emphasis added). In fact, the Second Circuit made repeated reference to determining whether *unregistered* trade dress qualifies for protection in the first instance. *See, e.g., id.*, 380 ("A similar concern for the protection of competition informs the initial stage of the analysis of a claim of trademark or trade dress infringement, i.e., determination of whether a mark, packaging or product design *qualifies for protection*.") (emphasis added), 377 (including cited analysis in a section titled "*Protectable – inherent distinction*.") (emphasis added).

The same is true for *Yurman Design, Inc.* and *Sherwood 48 Assocs.* In *Yurman Design, Inc.*, the Second Circuit not only specifically explained that an owner may apply to register its marks and obtain privileges for doing so—like Nike in this case—but also expressly noted that "Yurman has not registered what it seeks to protect as a trademark in this case[.]" *See Yurman Design, Inc.*, 262 F.3d at 114. And, before analyzing whether Yurman's unregistered marks were sufficiently articulated and distinctive, the Second Circuit explained that "the general principles

13

qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)), 116 ("[W]e hold that a plaintiff *seeking to protect* its trade dress in a line of products must articulate the design elements that compose the trade dress.") (emphasis added); *see also Sherwood 48 Associates*, 76 Fed. App'x at 391 (2d. Cir. 2003) ("The Property Owners have not identified their *purportedly protectable* trade dress with precision.") (emphasis added).

Moreover, BAPE's suggestion that the Second Circuit requires Nike to articulate how *each* individual element of its trade dress is distinctive likewise contradicts the long established anti-dissection rule, which provides that "it is the combination of elements that should be the focus of the distinctiveness inquiry." *Compare* Mot., 9 *with e.g., Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) ("Although each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the distinctiveness inquiry.").

2.     *Decisions From This District, Including Heller and E. Remy Martin, Do Not Support Requiring a Plaintiff Asserting Registered Trade Dress to Articulate in Its Complaint Which Features of Its Registered Trade Dress Are Distinctive and How They Are Distinctive*

BAPE relies heavily on *Heller* and *E. Remy Martin*, but neither supports extending the pleading requirements for unregistered trade dress to Nike's registered Asserted Trade Dress.

The court in *Heller* premised its decision on a flawed interpretation of a prior decision from this District. Specifically, the court in *Heller* cited the *Cartier* decision for the proposition that "[r]egistration, particularly a vague registration, does not affect the plaintiff's obligation to specify the elements of its allegedly distinctive trade dress." *See Heller Inc. v. Design Within Reach, Inc.*, No. 09CIV1909(JGK), 2009 WL 2486054, at *6 (S.D.N.Y. Aug. 14, 2009) (citing *Cartier, Inc. v.*

*Four Star Jewelry Creations, Inc.* 348 F. Supp. 2d 217, 223 (S.D.N.Y. 2004)). The court in *Heller* reasoned that *Cartier* supported that holding because the plaintiff in *Cartier* purportedly "articulat[ed] the specific elements that constitute its distinct trade dress, despite having a registered mark." *Id.* But that is not what actually happened in *Cartier*. The plaintiff in *Cartier* separately asserted claims of infringement for unregistered marks and registered marks. *See* Am. Complaint, *Cartier, Inc.,* 348 F. Supp. 2d, 2003 WL 23724589 at ¶¶ 17–36, 63, 71 (S.D.N.Y. May 13, 2003). For the *unregistered* marks, which were not entitled to a presumption of protectability, the plaintiff appropriately satisfied the additional pleading requirements for unregistered marks and articulated the elements comprising its trade dress. *See id.*, ¶¶ 18, 22, 28, 30, 33. For the *registered* marks, which were entitled to a presumption of protectability, the plaintiff relied on its federal registrations and did not additionally articulate in its complaint which features of its registered trade dress were distinctive and how they were distinctive. Specifically, the plaintiff in *Cartier* appropriately alleged the following for its registered trade dress:

- Cartier International owns Trademark Registration No. 2,322,769 for the French TANK (TANK Francaise) case design, issued on February 29, 2000. A copy of this registration is attached as Exhibit A (the "TANK FRANCAISE Registration").

- Cartier International owns Trademark Registration No. 2,436,100 for the PASHA DE CARTIER GRILLE TRADE DRESS design, issued on March 20, 2001. A copy of this registration is attached as Exhibit B (the "PASHA DE CARTIER GRILLE Registration").

*Id.*, ¶¶ 21, 36.[4]

---

[4] To the extent BAPE argues the plaintiff in *Cartier* alleged infringement of an allegedly registered PASHA DE CARTIER GRILLE Trade Dress, it would be incorrect. In addition to alleging infringement of a registered trademark covering certain aspects of the Pasha De Cartier Grille (*i.e.*, the "PASHA DE CARTIER GRILLE Registration"), the plaintiff in *Cartier* further alleged a separate claim of trade dress infringement for a broader set of unregistered features, which it separately defined in the complaint as the "PASHSA DE CARTEIR GRILLE Trade Dress."

Moreover, even if the *Heller* court had properly interpreted and relied on *Cartier*, which is not the case as explained above, the *Heller* decision is distinguishable for the additional reason that the *Heller* court was concerned with the "particularly [] vague" nature of the plaintiff's registration in that case. As BAPE concedes in its Motion, Nike's allegations exceed those in *Heller*. Mot., 7, n. 3. In *Heller*, the plaintiff attached a trade dress registration certificate to its complaint that contained no written description or corresponding diagrammed illustration identifying the specific elements of its trade dress. Complaint, *Heller v. Design Within Reach, Inc.*, No. 09-cv-1909-JGK (Dkt. 1), 21 (Ex. A, *Heller* Registration No. 3,270,850). As shown in the table below, the detailed written descriptions in Nike's Asserted Trade Dress registrations along with illustrations with solid and dotted lines indicating the portions of the design specifically claimed as part of the mark stand in stark contrast to *Heller's* asserted trade dress registration. *See id.*

| Nike's '905 Asserted Trade Dress Written Description | *Heller*'s Asserted Trade Dress Written Description |
|---|---|
| The mark consists of the design of the stitching on the exterior of the shoe, the design of the material panels that form the exterior body of the shoe, the design of the wavy panel on top of the shoe that encompasses the eyelets for the shoe laces, the design of the vertical ridge pattern on the sides of the sole of the shoe, and the relative position of these elements to each other. The broken lines show the position of the mark and are not claimed as part of the mark. | [None] |
| **Nike's '905 Asserted Trade Dress Diagrammed Illustration** | ***Heller*'s Asserted Trade Dress Illustration** |
|  |  |

The *E. Remy Martin* decision likewise does not warrant extending the pleading requirements for unregistered trade dress to Nike's registered Asserted Trade Dress. That case

involved allegations of infringement for an *unregistered* trade dress design in a cognac bottle with "a toroidal design with [a] recessed center." *See* Complaint, *E. Remy Martin & Co. v. Sire Spirits LLC*, 1:21-cv-06838-AKH (S.D.N.Y. Aug. 13, 2021) (Dkt. 1) ("*Remy* Compl."), ¶¶ 2, 18; *cf. E. Remy Martin & Co. v. Sire Spirits LLC*, No. 21 CIV. 6838 (AKH), 2022 WL 94882, at *10 (S.D.N.Y. Jan. 10, 2022) ("Defendants argue that Plaintiff's claims for federal trade dress infringement fail because the Complaint does not allege a registered mark that was infringed[.]"). The *Remy* plaintiff had various trade dress registrations purportedly covering its asserted unregistered trade dress, but it did not specifically allege infringement of those registered marks. *See id.* Rather, the *Remy* plaintiff alleged that the distinctiveness of its asserted *unregistered* trade dress was evidenced by its various registered marks. *Remy* Compl., ¶ 2. Notably, each registered trade dress referenced in the *Remy* plaintiff's complaint had a materially different written description. *Id.*, Exs. B-E. And, importantly, none of the registered trade dress referenced in the *Remy* plaintiff's complaint described the registered marks in the same way as the asserted *unregistered* trade dress, *i.e.*, "a toroidal design with [a] recessed center." *Id*.

The other cases BAPE cites from this District similarly fail to support BAPE's request to extend the pleading requirements for unregistered trade dress to Nike's registered Asserted Trade Dress. For example, BAPE relies on *Tracey Tooker & TT Ltd., Inc.,* a case involving *unregistered* trade dress, for the proposition that Nike failed to articulate the Asserted Trade Dress with sufficient specificity. *See* Mot., 6 (citing *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F.Supp. 3d 429, 434 (S.D.N.Y. 2016)). Yet, BAPE fails to bring to the Court's attention that *Tracey Tooker* explicitly distinguished cases involving registered and unregistered trade dress. The Court in that case rejected the plaintiff's reliance on cases involving *registered* trade dress because "[n]either

case concerned the issue here, which is a failure to specifically identify the elements of an *allegedly-protectable* trade dress." *Tracey Tooker,* 212 F. Supp. 3d at 435 (emphasis added).

The court's reasoning in *Tracey Tooker* for explicitly distinguishing between registered and unregistered trade dress makes sound legal and practical sense. Ignoring the distinction would lead to the non-sensical scenario in which obtaining summary judgment on claims for trade dress infringement would require a lower burden of production than pleading trade dress infringement. Specifically, courts in this District and the Second Circuit have repeatedly held that a certificate of registration with the USPTO is sufficient to establish that a mark is protectable for purposes of summary judgment. *See, e.g., Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022) (holding that the Court need not analyze whether the registered mark is protectable and moving straight to the second prong of the infringement analysis, which is whether there is a likelihood of confusion—"a certificate of registration with the PTO is *prima facie* evidence that the mark is registered and valid (*i.e.*, protectable).... In such circumstances, the Court need not tarry with the first prong of the infringement test.") (cleaned up); *BBK Tobacco & Foods, LLP*, 408 F. Supp. 3d at 520 ("Courts analyze trademark infringement claims brought under either provision using a two-step test that asks, first whether the mark 'merits protection' and, second, whether the allegedly infringing use of the mark (or a similar mark) is likely to cause consumer confusion.  If the allegedly infringed mark is registered, the first prong is satisfied by … producing a valid certificate of registration.") (cleaned up).

Thus, BAPE's arguments that decisions from this District, including *Heller* and *E. Remy Martin,* required Nike to articulate in its Complaint which features of its registered Asserted Trade Dress "are distinctive and how" is incorrect and unsupported. The court's decision in *Nat'l Hockey League v. Hockey Cup LLC* is more analogous to this case than any of the cases on which BAPE

relies. There, the court held that the NHL's "list[ing of] its registrations for its Stanley Cup trade dress in the complaint" satisfied the requirement to offer "a precise expression of the character and scope of the claimed trade dress." *Nat'l Hockey League v. Hockey Cup LLC*, No. 18-cv-6597, 2019 WL 130576, at *7 (S.D.N.Y. Jan. 8, 2019). Rather than address the substance of that decision after being on notice of it for over three months, BAPE chose not to include any discussion of it in its 9-page motion. BAPE's reluctance to address this case is telling.

3.    *BAPE's Assertion that Nike Has a Higher Pleading Standard for Its Registered Trade Dress is Unsupported and Contrary to Second Circuit Precedent*

Throughout its Motion, BAPE urges the Court to impose a "higher" pleading standard with respect to Nike's allegations that its federally registered Asserted Trade Dress is "protectable" under the theory that "[c]ourts in the Second Circuit 'have been reluctant to *extend trade dress protection* to a product's design[.]'" *See, e.g.*, Mot., 5 (emphasis added). BAPE further argues that "[a]s high as the standard is for pleading product configuration trade dress, it is higher still when a court is asked to *extend trade dress protection* to "an entire line of products (as opposed to a single product)." *Id.* (emphasis added). BAPE's requests, however, are premised on the legally erroneous assertion that a plaintiff cannot plead the existence of protectable trade dress rights through incorporation of valid certificates of registration into the complaint.

First, the Second Circuit has unambiguously expressed its view that certificates of registration, like those for the Asserted Trade Dress incorporated into the Complaint, constitute prima facie evidence that a mark is protectable. *See, e.g.*, *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216, n.10 (2d Cir. 2012) ("A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (i.e., *protectable*)[.]").

Second, a plaintiff at any stage of the case, including at the pleading stage, can establish that its mark is protectable by producing a valid certificate of registration, like Nike already did in

its well-pleaded Complaint.  *BBK Tobacco & Foods, LLP*, 408 F. Supp. 3d at 520 ("Courts analyze trademark infringement claims brought under either provision using a two-step test that asks, first whether the mark 'merits protection' and, second, whether the allegedly infringing use of the mark (or a similar mark) is likely to cause consumer confusion.  If the allegedly infringed mark is registered, the first prong is satisfied by … producing a valid certificate of registration.") (cleaned up).

In other words, a *registered* trade dress, like Nike's Asserted Trade Dress, is protectable until a defendant, like BAPE, proves otherwise. *See BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019) ("When a plaintiff sues for infringement of its registered trademark, the defendant bears the burden to rebut the mark's protectability."). That is precisely why the Second Circuit's concerns with respect to "extending protection" to "product designs" and "line[s] of products" are inapplicable in the context of *registered* trade dress— especially at the pleading stage where BAPE has introduced no evidence to rebut this presumption. Any "higher burden" to plead the protectability of *registered* trade dress would be incompatible with these presumptions and would undermine another concern articulated by the Second Circuit—that registered trademarks, like the Asserted Trade Dress, should be "afforded the utmost protection."

4.   *Although not Required, Nike's Complaint Exceeds What Courts Require at the Pleading Stage for Unregistered Trade Dress*

Even if the Court were to incorrectly apply the pleading requirements for unregistered trade dress to Nike's registered trade dress, Nike's allegations in its Complaint, including Nike's articulation of the character and scope of its Asserted Trade Dress, exceeds what courts have required for unregistered trade dress in the cases cited by BAPE.  For the Court's reference, Nike's detailed written descriptions and corresponding diagrammed illustrations are reproduced below.

| Reg. No. | Diagrammed Illustration | Detailed Written Description |
|---|---|---|
| 3,451,905 |  | The mark consists of the design of the stitching on the exterior of the shoe, the design of the material panels that form the exterior body of the shoe, the design of the wavy panel on top of the shoe that encompasses the eyelets for the shoe laces, the design of the vertical ridge pattern on the sides of the sole of the shoe, and the relative position of these elements to each other. The broken lines show the position of the mark and are not claimed as part of the mark. |
| 3,451,906 |  | The mark consists of the design of the stitching on the exterior of the shoe, the design of the material panels that form the exterior body of the shoe, the design of the wavy panel on top of the shoe that encompasses the eyelets for the shoe laces, the design of the vertical ridge pattern on the sides of the sole of the shoe, and the relative position of these elements to each other. The broken lines show the position of the mark and are not claimed as part of the mark. |
| 3,711,305 |  | The mark consists of the design of the stitching on the exterior of the shoe, the design of the material panels that form the exterior body of the shoe, the design of the wavy panel on top of the shoe that encompasses the eyelets for the shoe laces, the design of the vertical ridge pattern on the sides of the sole of the shoe, and the relative position of these elements to each other. The broken lines show the position of the mark and are not claimed as part of the mark. |
| 6,368,694 |  | The mark consists of a three-dimensional configuration comprising the design of the material panels that form the exterior body of the shoe, the design of the panel on top of the shoe that includes the eyelets for the shoe laces, the design of the ridge pattern on the sides of the sole of the shoe, the design of a stitched line running along the midsole of the shoe, and the relative position of these elements to each other. The broken lines show the position of the mark and are not claimed as part of the mark. Color is not claimed as a feature of the mark. |

21

| | | |
|---|---|---|
| 5,820,374 |  | The mark consists of a three-dimensional configuration comprising the design of the vertical ridge pattern on the sides of the sole of the shoe, the repeating star pattern on the toe and heel of the sole of the shoe, and the relative position of these elements to each other. The broken lines show the position of the mark and are not claimed as a feature of the mark. |
| 6,368,691 |  | The mark consists of a three-dimensional configuration comprising the design of the material panels that form the exterior body of the shoe, the design of the panel on top of the shoe that includes the eyelets for the shoe laces, the design of the ridge pattern on the sides of the sole of the shoe, the design of a material panel on the heel, the design of a stitched line running along the midsole of the shoe, and the relative position of these elements to each other. The broken lines show the position of the mark and are not claimed as part of the mark. Color is not claimed as a feature of the mark. |

In view of these detailed written descriptions and corresponding diagrammed illustrations containing solid and dotted lines indicating the portions of the design specifically claimed as part of the marks, BAPE's assertion that "Nike has failed to allege any elements of its Asserted Marks" belies reason.

First, Nike has alleged the elements of its Asserted Marks. They are reproduced above and were properly incorporated in the Complaint. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) ("A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citation omitted).

Second, the examiners at the USPTO reviewed Nike's applications for the Asserted Trade Dress and determined these detailed written descriptions and corresponding diagrammed illustrations provide sufficient notice to the public (including BAPE) of the scope and nature of the Asserted Trade Dress. *See* Sec. II.A.1, *supra*. To the extent there is any doubt, the examiner's

review of the written descriptions and corresponding diagrammed illustrations is not hypothetical. Here, the examiners at the USPTO specifically required Nike to submit revised descriptions and diagrammed illustrations for the two earliest applications (*i.e.*, the '905 and '906 Registrations) to obtain registrations and presumptions of protectability. As such, the Court should reject BAPE's conclusory assertions that the written descriptions and diagrammed illustrations are not sufficient to plead an action for trade dress infringement. The Second Circuit already acknowledges that "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)[,]" and the Asserted Trade Dress have qualified for registration with the descriptions and illustrations contained in the certificates of registration. *See Yurman Design, Inc.*, 262 F.3d at 114.

The Court should likewise disregard BAPE's attempts to diminish the detailed nature of these descriptions by analogizing them to descriptions that are facially not analogous. For example, BAPE heavily analogizes Nike's allegations to those in *Nat'l Lighting Co.* However, unlike Nike, the plaintiff in *Nat'l Lighting Co.* "was endeavoring to protect via trade dress law" an *unregistered* trade dress. *See Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 561-62 (S.D.N.Y. 2009). Within this context, the court raised three concerns with the plaintiff's description of its *unregistered* trade dress. First, the plaintiff's description failed to articulate the scope of the unregistered trade dress. *See id.*, 562 ("[P]laintiff was unable to identify which of the twelve listed design elements are consistent throughout the entire product line or how specifically the claimed trade dress incorporates those common elements."). Here, the scope of Nike's Asserted Trade Dress is expressly contained in the body of its registrations, which the examiners at the USPTO reviewed and approved. *See, e.g.*, Compl. Ex. 4 (305 Registration) ("The broken lines show the position of the mark and are not claimed as part of the mark.").

Second, the plaintiff in *Nat'l Lighting Co.* failed to articulate which elements of its *unprotected* and *unregistered* trade dress were distinctive and how they were distinctive. *Compare Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No. 1:20-CV-07899-PAC, 2021 WL 1758881, at *4 (S.D.N.Y. May 4, 2021) ("Plaintiff's claim for infringement of *its unregistered trade dress* must be dismissed, because Plaintiff has neither specified which features of its product are distinctive, nor given any indication as to how they are distinctive.") (emphasis added). As explained throughout this opposition, Nike's registered trade dress "are presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 871.

Third, the plaintiff in *Nat'l Lighting Co.* failed to inform the court which of the various different designs out of a multitude of distinct products were encompassed in its purported trade dress:

> Is plaintiff seeking solely to protect the eleven actual lighting fixtures pictured in the brochures from Exhibit C? Or is plaintiff seeking trade dress protection for each permutation of the ten different series described in the specifications from Exhibit D—in a sense, ten different product lines? If the latter, why does plaintiff include and mark an eleventh fixture in Exhibit C even though that fixture is not a member of any of the ten series listed in Exhibit D?

*Nat'l Lighting Co.*, 601 F. Supp. 2d at 563. Nike's well-pleaded allegations provide no analogous concern. BAPE knows precisely what designs Nike is asserting—Registration Nos. 3,451,905; 3,451,906; 3,711,305; 5,820,374; 6,368,694, and 6,368,691.

BAPE's reliance on *E. Remy Martin* is also unavailing. As discussed in Sec. III.B.2, *supra*, the plaintiff in *E. Remy Martin* did not specifically assert its registered trade dress. Rather, the plaintiff in *E. Remy Martin* asserted a broader *unregistered* trade dress in common design features present across varying and distinct versions of its cognac bottles dating back to 1985. Am. Compl., *E. Remy Martin & Co.*, Case No. 21-cv-6838 (Dkt. 68), ¶ 20 ("From the inception of its sales in 1985, Plaintiff's XO cognac has been sold in distinctive product packaging. Like its predecessor

bottles, the current RÉMY BOTTLE Trade Dress features this distinctive product packaging, comprising [description of unregistered trade dress]").



Remy Compl., ¶ 18. Again, Nike's well-pleaded allegations provide no analogous concern. Unlike the plaintiff in *E. Remy Martin*, Nike is not asserting undefined and purportedly common design features across varying products dating back decades. Nike instead asserts trade dress infringement of Registration Nos. 3,451,905; 3,451,906; 3,711,305; 5,820,374; 6,368,694, and 6,368,691, as alleged in the Complaint. *See, e.g.*, Compl. ¶¶ 24, 30, 37, Exs. 1-6.

In any event, Nike's federal registrations with their detailed written descriptions *and* corresponding diagrammed illustrations describe the asserted trade dress with just as much, if not more, particularity than the description the court ultimately found sufficient in *E. Remy Martin*. And, as explained throughout this Opposition, the examiners at the USPTO already concluded that the elements of Nike's Asserted Trade Dress are sufficiently described "so that the public [including BAPE] will know the exact parameters of the claimed exclusive right covered by the registration." *See* Sec. II.A.1, *supra*.

**IV.   CONCLUSION**

Nike's Complaint contains well-pleaded allegations that more than meet the requisite pleading requirements for registered trade dress. Nike respectfully requests that the Court deny BAPE's motion to dismiss and require BAPE to respond to Nike's well-pleaded allegations.

Dated: June 7, 2023

Respectfully submitted,

s/ *Michael J. Gershoni*
Christopher J. Renk (admitted *pro hac vice*)
Chris.Renk@arnoldporter.com
Michael J. Harris (admitted *pro hac vice*)
Michael.Harris@arnoldporter.com
Aaron Bowling (admitted *pro hac vice*)
Aaron.Bowling@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4231
Telephone: (312) 583-2300
Facsimile: (312) 583-2360

Bridgette C. Gershoni (admitted *pro hac vice*)
Bridgette.Gershoni@arnoldporter.com
Michael J. Gershoni (admitted *pro hac vice*)
Michael.Gershoni@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-6745
Facsimile: (202) 942-5999

Michael J. Sebba
Michael.Sebba@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

*Counsel for Plaintiff Nike, Inc*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 7, 2023, I caused a true and correct copy of **NIKE'S OPPOSITION TO DEFENDANT USAPE LLC'S MOTION TO DISMISS** to be served via ECF on the following counsel for Defendants:

Kieran G. Doyle
Jeremy A. Berman
COWAN, LIEBOWITZ & LATMAN, P.C.
*kgd@cll.com*
*jab@cll.com*

*/s/ Michael J. Gershoni*
For Plaintiff Nike, Inc.