# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

<table>
<tr><td>

NIKE, INC.,

                     Plaintiff,

      - against -

RELOADED MERCH LLC and BILL OMAR
CARRASQUILLO,

                  Defendants.

</td></tr>
</table>

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/22/2023
```

**22 Civ. 10176 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Nike, Inc. ("Nike") brought this action against defendants Reloaded Merch LLC and Bill Omar Carrasquillo (together, "Defendants" or "Omi") claiming trademark infringement, false designation of origin, unfair competition, and trademark dilution related to Defendants' sneaker designs, which Nike alleges are copies of Nike's own designs. Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion to Dismiss is **DENIED.**

## I.  BACKGROUND[1]

Nike is the world's largest seller of sports footwear. This suit involves the product designs for two of Nike's most

---

[1] Except as otherwise noted, the factual background derives from the Complaint and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See infra Section II.

popular and recognizable footwear products: the Air Jordan 1 and Dunk sneakers.

The Air Jordan 1 design goes back to 1984, when Nike developed the sneaker for Michael Jordan during his rookie year playing in the National Basketball Association ("NBA"). Nike began selling the Air Jordan 1 to consumers in 1985. Originally released in the familiar black and red colorway, Nike released thirteen additional colorways over the next several months. The Air Jordan 1 generated significant publicity from the start, when the NBA began fining Michael Jordan for wearing the sneakers during games in violation of the league's uniform rules. This controversy contributed to the Air Jordan 1's enormous popularity and high grossing sales. Before long, the Air Jordan 1 became a fashion trend beyond basketball, and it continues to be one of the most popular and recognizable sneakers today.

Introduced in 1986, the Dunk sneaker was promoted by Nike's famous "Be True to Your School" advertising campaign. This promotion highlighted Nike's College Colors Program, which allowed schools to obtain Dunk sneakers with a color scheme that matched their school colors. Like the Air Jordan 1, the Dunk sneaker quickly grew in popularity, which soon spread beyond basketball to consumers more broadly, becoming especially popular in the skateboarding community. Also like

the Air Jordan 1, the Dunk sneaker remains one of the most popular and recognizable sneakers today.

To protect its trade dress rights in these product designs, Nike obtained five trade dress registrations from the United States Patent and Trademark Office ("USPTO"), with the following registration numbers ("Reg. Nos.") in 2009 and 2021:

1. Reg. No. 6,368,694 – Air Jordan 1 High sneaker

2. Reg. No. 6,368,691 – Air Jordan 1 Low OG sneaker

3. Reg. No. 3,711,305 – Dunk Low sneaker

4. Reg. No. 3,721,064 - Outsole for both sneakers

Nike purportedly maintains careful quality control standards for all its products that use these registered trade dress designs, in order to protect its business reputation and goodwill. For example, Nike states that it "carefully determines how many products bearing the [protected trade dress designs] are released, where the products are released, when the products are released, and how the products are released." (See Complaint ¶ 32, Dkt. No. 1 ("Complaint" or "Compl.").)

On November 30, 2022, Nike brought suit against six defendants,[2] alleging trademark infringement, false

---

[2] On March 22, 2023, the Court granted a Motion to Sever filed by defendants By Kiy LLC, David Weeks, and Nickwon Arvinger ("Severed Defendants").[2] (See Dkt. No. 67.) An electronic summons was issued as to

designation of origin, unfair competition, and trademark
dilution under both state and federal law. Most relevant here,
Nike alleged that Omi produced, marketed, and sold "knockoff"
products that infringed on Nike's registered trade dress
designs. (See Compl. ¶¶ 3-4, 48-62.) Nike incorporated its
trade dress registrations into the Complaint and attached as
exhibits copies of each certificate of registration. (See
Compl. Exhibits ("Exs.") 2-5.)

Those certificates of registration include detailed
written descriptions of the trade dress along with diagrammed
illustrations, which use solid and dotted lines to
distinguish the non-protected functional elements from the
protected design elements that, together, comprise the marks.
For example, Nike attached to the Complaint the following
certificate of registration for its Air Jordan 1 High sneaker
(Reg. No. 6,368,694):

defendant Xiamen Wandering Planet Import and Export Co., Ltd. ("Wandering
Planet") on December 1, 2022, (see Dkt. No. 16), but Wandering Planet
does not appear to have ever been served and has not entered an appearance
in this case.

# United States of America
## United States Patent and Trademark Office



**Reg. No. 6,368,694**

**Registered Jun. 01, 2021**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

Nike, Inc. (OREGON CORPORATION)
One Bowerman Dr.
Beaverton, OREGON 97005

CLASS 25: Footwear

FIRST USE 4-00-1985; IN COMMERCE 4-00-1985

The mark consists of a three-dimensional configuration comprising the design of the material panels that form the exterior body of the shoe, the design of the panel on top of the shoe that includes the eyelets for the shoe laces, the design of the ridge pattern on the sides of the sole of the shoe, the design of a stitched line running along the midsole of the shoe, and the relative position of these elements to each other. The broken lines show the position of the mark and are not claimed as part of the mark. Color is not claimed as a feature of the mark.

SEC.2(F)

SER. NO. 90-086,080, FILED 07-31-2020

(See Compl. Ex. 2.)

The certificate of registration for Nike's Dunk sneaker design (Reg. No. 3,711,305) is similarly illustrated:



# United States of America
## United States Patent and Trademark Office

**Reg. No. 3,711,305**
Registered Nov. 17, 2009

**Int. Cl.: 25**

**TRADEMARK**
**PRINCIPAL REGISTER**

NIKE, INC. (OREGON CORPORATION)
ONE BOWERMAN DRIVE
BEAVERTON, OR 97005

FOR: FOOTWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 0-0-1986; IN COMMERCE 0-0-1986.

OWNER OF U.S. REG. NOS. 3,451,905, 3,451,906, AND 3,451,907.

THE MARK CONSISTS OF THE DESIGN OF THE STITCHING ON THE EXTERIOR OF THE SHOE, THE DESIGN OF THE MATERIAL PANELS THAT FORM THE EXTERIOR BODY OF THE SHOE, THE DESIGN OF THE WAVY PANEL ON TOP OF THE SHOE THAT ENCOMPASSES THE EYELETS FOR THE SHOE LACES, THE DESIGN OF THE VERTICAL RIDGE PATTERN ON THE SIDES OF THE SOLE OF THE SHOE, AND THE RELATIVE POSITION OF THESE ELEMENTS TO EACH OTHER. THE BROKEN LINES SHOW THE POSITION OF THE MARK AND ARE NOT CLAIMED AS PART OF THE MARK.

SEC. 2(F).

SER. NO. 77-621,641, FILED 11-25-2008.

FRANK LATTUCA, EXAMINING ATTORNEY

(See Compl. Ex. 5.)

Not all of the written descriptions are as detailed as those displayed above, such as the description provided for the Outsole for the Air Jordan 1 and Dunk sneakers (Reg. No. 3,721,064):



# United States of America
## United States Patent and Trademark Office

**Reg. No. 3,721,064**
Registered Dec. 8, 2009

NIKE, INC. (OREGON CORPORATION)
ONE BOWERMAN DRIVE
BEAVERTON, OR 97005

**Int. Cl.: 25**

FOR: FOOTWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 0-0-1986; IN COMMERCE 0-0-1986.

**TRADEMARK**
**PRINCIPAL REGISTER**

THE MARK CONSISTS OF THE DESIGN OF THE TREAD ON THE SOLE A SHOE. THE BROKEN LINES SHOW THE POSITION OF THE MARK ON THE GOODS AND ARE NOT CLAIMED AS A PART OF THE MARK. COLOR IS NOT CLAIMED AS A FEATURE OF THE MARK.

SEC. 2(F).

SER. NO. 77-621,665, FILED 11-25-2008.

RICHARD WHITE, EXAMINING ATTORNEY

(<u>See</u> Compl. Ex. 4.)

Nike also included illustrations of Defendants' allegedly infringing products, in order to demonstrate the similarity between Defendants' products and Nike's protected trade dress.

| Asserted Marks | Omi's Infringing Products |
|---|---|
|  | |

| Asserted Marks | Omi's Infringing Products |
|---|---|
|  | |

(See Compl. ¶ 49.) And in order to show evidence of marketplace confusion among consumers, Nike produced

screenshots of several social media posts where consumers reacted to the apparent similarities between Defendants' sneakers and Nike's. (See Compl. ¶ 50-51.)

Omi filed its Motion to Dismiss on March 27, 2023. (See Dkt. Nos. 69-70 ("Motion" or "Mot.").) On April 17, 2023, Nike filed its Opposition to Omi's Motion to Dismiss (see Dkt. No. 74 ("Opposition" or "Opp.")), and Omi filed its Reply on May 1, 2023 (see Dkt. No. 76).

## II.   RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a complaint should not be dismissed when the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

9

A Rule 12(b)(6) motion challenges only the legal feasibility of the complaint, and courts adjudicating such motions "take[ ] no account of the complaint's 'basis in evidence.'" Nunes v. NBCUniversal Media, LLC, 643 F. Supp. 3d 403, 411 (S.D.N.Y. 2022) (quoting Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016)). "Generally, courts do not look beyond facts stated on the face of the complaint, documents incorporated in the complaint, matters of which judicial notice may be taken and documents that are 'integral' to the complaint." Id. (quoting Goel, 820 F.3d at 559). At the same time, the Rule 12(b)(6) standard instructs the Court to construe the complaint "liberally." In re Inclusive Access Course Materials Antitrust Litig., 544 F. Supp. 3d 420, 431 (S.D.N.Y. 2021) (quoting Coal. for Competitive Elec. v. Zibelman, 906 F.3d 41, 48–49 (2d Cir. 2018)).

### III.  DISCUSSION

For the reasons stated below, the Court finds that Nike has sufficiently stated a claim for trade dress infringement.

A.  LEGAL STANDARD

The Court will analyze Nike's state law claims under the same framework as applies to the Lanham Act claims. See Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 101 n.6 (2d Cir. 2010) ("[C]auses of action under both the Lanham Act and New

York State common law . . . are composed of the same elements. We therefore analyze them together.").

Section 32(1) of the Lanham Act ("§ 32(1)") covers registered marks and extends liability to persons who,

> without the consent of the registrant[,] . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

Section 43(a) of the Lanham Act ("§ 43(a)") covers unregistered marks and extends liability to persons who

> use[] in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person.

Id. § 1125(a)(1)(A).

The protection afforded to trademarks by § 32(1) and § 43(a) extends to trade dress and product design. See Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 114-15 (2d Cir. 2006) (citing Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000)). "Trade dress today encompasses a broad concept of how a product presented to the public looks, including its color, design, container, and all the elements that make up its total appearance." GeigTech E.

11

Bay LLC v. Lutron Elec. Co., Inc., 352 F. Supp. 3d 265, 274
(S.D.N.Y. 2018) (brackets omitted).

Courts "analyze trademark infringement claims under the
familiar two-prong test." Louis Vuitton Malletier, 454 F.3d
at 115. A plaintiff alleging trade dress infringement under
the Lanham Act "must demonstrate that (1) it has a valid mark
that is entitled to protection and that (2) the defendant's
actions are likely to cause confusion with that mark." Tiffany
and Co. v. Costco Wholesale Corp., 971 F.3d 74, 84 (2d Cir.
2020) (quotation marks and brackets omitted); see Victorinox
AG v. B&F Sys., Inc., 709 F. App'x 44, 47 (2d Cir. 2017) ("We
analyze a trademark infringement claim 'in two stages, asking
first whether the mark merits protection and, second, whether
the allegedly infringing use of the mark (or a similar mark)
is 'likely to cause consumer confusion.'" (quoting Christian
Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696
F.3d 206, 224 (2d Cir. 2012))).

To demonstrate that a mark is valid and entitled to
protection, courts require plaintiffs to make three separate
showings. First, the plaintiff must "offer a precise
expression of the character and scope of the claimed trade
dress." GeigTech, 352 F. Supp. 3d at 274 (quotation marks
omitted). Second, the plaintiff "has the burden of proving
that the matter sought to be protected is not functional."

Id. at 275 (quoting 15 U.S.C. § 1125(c)(4)). Third, the plaintiff must "show that its trade dress has acquired secondary meaning," which "has been interpreted by the Supreme Court to mean that a plaintiff must show that its trade dress is distinctive." Id.

Once a court determines the mark is valid and protectable, it then considers "whether the allegedly infringing use of the mark (or a similar mark) is likely to cause consumer confusion." Christian Louboutin, 696 F.3d at 224 (quotation marks omitted); see Tiffany and Co., 971 F.3d at 84; Victorinox, 709 F. App'x at 47. Courts evaluating whether a plaintiff has demonstrated a likelihood of confusion apply the eight non-exclusive Polaroid factors:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC, 823 F.3d 153, 160 (2d Cir. 2016) (citing Polaroid Corp. v. Polaroid Electronics Corp., 287 F.2d 492 (2d Cir. 1961)).

While these elements must be proven in order for a plaintiff to ultimately prevail on a claim for trade dress infringement, "a plaintiff need only articulate sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'" at the motion to dismiss stage. GeigTech, 352 F. Supp. 3d at 275 (quoting Iqbal, 556 U.S. at 678).

B.   ANALYSIS

The Court finds that Nike has sufficiently pleaded the elements necessary to state a claim for trade dress infringement. Nike satisfied the first prong of the infringement test by registering its trade dress with the USPTO and attaching the certificates of registration to the Complaint. (See Compl. ¶¶ 25, 30; id. Exs. 2–5.) And Nike satisfied the second prong by alleging facts sufficient to show a likelihood of confusion, including that Omi's sneakers are similar to Nike's registered trade dress, that Omi marketed and sold these sneakers to "identical customers as Nike's genuine products," and that consumers' social media posts indicate widespread marketplace confusion caused by the similarities between Omi's sneakers and Nike's. (Compl. ¶¶ 50–56.)

In its Motion, Omi argues that Nike failed to satisfy its pleading requirements to offer "a precise expression of

14

the character and scope of the claimed trade dress" and "specify both which features are distinctive and how they are distinctive." (Mot. at 1, 11 (quotation marks and citation omitted).)[3] Nike responds that it satisfied its *prima facie* burden by incorporating the certificates of registration into its Complaint. (See Opp. at 10 (citing Compl. ¶ ¶ 25, 30; id. Exs. 2-5).)

So the central issue before the Court is whether Nike, as a registered trade dress holder, may rely on certificates of registration to identify its trade dress' character and scope and its distinctiveness. The Court agrees with Nike that Nike may so rely. In effect, when it obtained its registrations from the USPTO, Nike articulated the character and scope of its trade dress designs, and established the distinctiveness of the protected elements that comprised the trade dress designs. By producing the certificates of registration, Nike has established that its trade dress marks are valid and protectable. Nike is not required to separately plead the trade dress' character and scope or distinctiveness to state a claim for relief.

Omi nevertheless argues that "a plaintiff's obligation to specify the elements of its allegedly distinctive trade

---

[3] Omi does not dispute that Nike alleged they targeted the same customers as Nike, nor does it dispute that Nike alleged a likelihood of confusion.

dress is not obviated or lessened by the fact that the trade
dress is registered with the USPTO." (Mot. at 15.) But this
argument is inconsistent with the text of the Lanham Act and
with Supreme Court and Second Circuit precedent, all of which
confirm that registered trade dress claims do not require
plaintiffs to satisfy the same pleading requirements as
unregistered trade dress claims.

The Court starts with the statutory text. The Lanham Act
provides that "[a]ny registration . . . of a mark . . . shall
be prima facie evidence of the validity of the registered
mark." 15 U.S.C. § 1115(a). And a "certificate of
registration of a mark upon the principal register . . . shall
be prima facie evidence of the validity of the registered
mark." Id. § 1057(b). To that end, registering a trade dress
with the USPTO "confers on the mark's holder certain benefits
in litigation, including a rebuttable presumption that the
mark is valid." Sulzer Mixpac AG v. A&N Trading Co., 988 F.3d
174, 178 n.2 (2d Cir. 2021); see Samara Bros., 529 U.S. at
209 (registering a mark "entitles the owner to a presumption
that the mark is valid" (citing 15 U.S.C. § 1057(b)); see
also Lane Capital Mgmt., 192 F.3d at 345.

In practice, this presumption operates by satisfying
prong one of the infringement test (the trade dress' validity)
and shifting the inquiry to the second prong (likelihood of

confusion). See Victorinox, 709 F. App'x at 47 ("As to the first stage, a certificate of registration with the [USPTO] is prima facie evidence that the mark is registered and valid (*i.e.*, protectable)." (quotation marks and brackets omitted)).

The reason courts consider registered trade dress presumptively valid is that the USPTO requires applicants to make the same showing that prong one requires. See generally Trademark Manual of Examining Procedure ("TMEP") (Jul. 2022 ed.), accessible at http://www.uspto.gov/trademark/guides-and-manuals/tmep-archives.[4] Before a trade dress can be registered, the USPTO requires applicants to (1) list and define the elements of the trade dress, (2) establish the trade dress' distinctiveness, and (3) demonstrate that the trade dress is not functional. See id. § 1202.02.

First, the USPTO requires that "the elements of the trade dress must be listed and defined so that the public will know the exact parameters of the claimed exclusive right covered by the registration." 1 McCarthy on Trademarks and Unfair

---

[4] The TMEP "is the official internal manual of procedure to be followed by trademark attorney examiners in reviewing applications for the registration of marks in the [USPTO]." 3 McCarthy on Trademarks and Unfair Competition § 19:129 (5th ed.); see West Fla. Seafood v. Jet Restaurants, 31 F.3d 1122, n.8 (Fed. Cir. 1994) ("While the TMEP does not have the force and effect of law, it set forth the guidelines and procedures followed by the examining attorneys at the PTO."); see also 15 U.S.C. § 1051(a)(4) ("The applicant shall comply with such rules and or regulations as may be prescribed by the [USPTO].").

Competition § 8:7 (5th ed.); see TMEP § 1202.02(c)(i) (requiring applicants to provide "[d]rawings of three-dimensional product design and product packaging trade dress marks [that] may not contain elements that are not part of the mark" (citing 37 C.F.R. § 2.5(b)(4)).[5] Assuming that it has adequately defined its trade dress, the applicant must also "establish[] that the mark had acquired distinctiveness under § 2(f) of the Trademark Act" by making "a showing of secondary meaning." Id. § 1202.02(b)(i)(a). Finally, the applicant must show that the proposed trade dress is not functional. See id. § 1202.02. While these requirements are not exhaustive, applicants seeking to register a proposed trade dress with the USPTO must satisfy these three conditions before a certificate of registration will be issued.

It is no accident that the pleading requirements for unregistered trade dress claims mirror the USPTO's registration requirements. Compare GeigTech, 352 F. Supp. 3d at 274, with TMEP §§ 1202.02(a), 1202.02(b)(i), and 1202.02(c). In order to ensure uniformity between registered trade dress and unregistered trade dress claims, the Supreme Court (and the lower courts) fashioned the pleading

---

[5] See TMEP § 1202.02(c)(i) ("[S]olid lines must be used on the drawing to show the elements of the product design . . . that are claimed as part of the mark, and broken or dotted lines must be used to indicate the portions that are not claimed as part of the mark.").

requirements for unregistered trade dress claims after the
USPTO's registration requirements. See Two Pesos Inc. v. Taco
Cabana, Inc., 505 U.S. 763, 768 (1992) ("[I]t is common ground
that . . . the general principles qualifying a mark for
registration under § 2 of the Lanham Act are for the most
part applicable in determining whether an unregistered mark
is entitled to protection under § 43(a))." (citing A.J.
Canfield Co. v. Honickman, 808 F.2d 291, 299, n.9 (3d Cir.
1986) ("[F]ederal law [governing unregistered marks] under
§ 43(a) of the Lanham Act generally follows the principles
established by statute and the courts for registered marks
under § 2(e)(f)," with the "one difference between registered
and unregistered marks . . . [being] that unregistered marks
have no presumption of validity.")); Yurman Design, Inc. v.
PAJ, Inc., 262 F.3d 101, 114 (2d Cir. 2001) (same). Thus, the
standard developed for unregistered trade dress intentionally
"tracks the statutory requirement for gaining registration"
with the USPTO. A.J. Canfield, 808 F.2d at 299 n.9.

For example, the Supreme Court explained in Two Pesos
that a showing of distinctiveness is required for
unregistered trade dress claims under § 43(a) because the
same showing is required for a trade dress to be registered
under § 2. See 505 U.S. at 768-69. And in Samara Bros., the
Supreme Court noted that while "[n]othing in § 43(a)

19

explicitly requires a producer to show its trade dress is distinctive, [] courts have universally imposed that requirement, since . . . [d]istinctiveness is . . . an explicit prerequisite for registration of trade dress under § 2." 528 U.S. at 210. Indeed, Samara Bros. observed that the standard for "for evaluating the distinctiveness of a [registered] mark under § 2" applied "by analogy" for unregistered marks "under § 43(a)." Id. That is why, in the absence of a certificate of registration demonstrating that the trade dress meets the criteria for validity, courts require plaintiffs to make that showing at the pleading stage before finding the trade dress protectable and proceeding to the second prong. See Louis Vuitton, 454 F.3d at 114-15.

In the same vein, it is unnecessary to demand the same showing from registered trade dress holders, who have already satisfied this standard by passing through the gauntlet of the USPTO's registration process. See BBK Tobacco & Foods, LLP v. Galaxy VI Corp., 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019) ("If the allegedly infringed mark is registered, the first prong is satisfied by showing that it is valid and registered." (quotation marks and brackets omitted)); Goat Fashion Ltd. v. 1661, Inc., No. 19 Civ. 11045, 2020 WL 5758917, at *9 (S.D.N.Y. Sept. 28, 2020) (Where "[t]here is no dispute that [a] mark was lawfully registered with the

20

USPTO," "[t]he first element is . . . satisfied.") A certificate of registration therefore eliminates any need for plaintiffs to prove a trade dress' validity by separately describing in its complaint the trade dress' precise character and scope, distinctiveness, and non-functionality.

For registered trade dress claims, therefore, "the first prong is satisfied by . . . producing a valid certification of registration." BBK Tobacco & Foods, 408 F. Supp. 3d at 520 (quotation marks and brackets omitted) (citing Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999)). So once a plaintiff has "satisfied its *prima facie* burden" by offering a "certificate of . . . registration," courts "need not tarry with the first prong of the infringement test" and may move straight to the second prong -- whether there is a likelihood of confusion. Capri Sun GmbH v. Am. Beverage Corp., 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022); see Easy Spirit, LLC v. Skechers U.S.A., Inc., 515 F. Supp. 3d 47, 70 (S.D.N.Y. 2021) ("This Court 'need not tarry with the first prong of the infringement test'" because the trademark "was registered with the USPTO." (quoting Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004)); see also Mr. Water Heater Enter., Inc. v. 1-800-Hot Water Heater, LLC, 648 F. Supp. 2d 576, 584 (S.D.N.Y. 2009).

21

Having already made a showing of validity and protectability before the USPTO during the registration process, the holder of a registered trade dress is free from needing to describe in its complaint how it meets each element of prong one. Consistent with this reasoning, the Second Circuit has stated that "[r]egistration by the [USPTO] without proof of secondary meaning creates the presumption that the mark . . . is inherently distinctive." Lane Capital Mgmt., 192 F.3d at 345; see Thompson Medical Co., Inc. v. Pfizer, Inc., 753 F.2d 208, 216 n.14 (2d Cir. 1985) ("Of course, proof of secondary meaning is not required when a plaintiff brings a claim for infringement of a registered mark" because "registered marks are presumed to represent the source in the minds of the public." (quotation marks and brackets omitted)); Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986) (noting registered trademarks are "presumed to be distinctive and should be afforded the utmost protection"). Second Circuit case law thus directly forecloses Omi's argument that Nike failed to meet its burden of showing distinctiveness. (See Mot. at 1, 7, 9.)

Applying the same analysis, courts in this district have likewise held that registered mark holders need not satisfy the prong one elements. Thus, in National Hockey League v.

Hockey Cup LLC (the case most analogous to this suit), the court concluded that the plaintiff's "list[ing of] its registration for its Stanley Cup trade dress in the complaint" satisfied the prong one requirement to offer "a precise expression of the character and scope of the claimed trade dress." No. 18 Civ. 6597, 2019 WL 130576, at *7 (S.D.N.Y. Jan. 8, 2019). And in Telebrands Corp. v. Del Laboratories, Inc., the court recognized that, in contrast to a claim involving an unregistered trademark under § 43(a), "a claim for registered trademark infringement under § 32(1) of the [Lanham] Act does not require to plead non-functionality," because a "certificate of trademark registration is prima facie evidence of the validity of a trademark." 719 F. Supp. 2d 283, 299 (S.D.N.Y. 2010). And since trade dress in that case was "the subject of a registered federal trademark, U.S. Trademark Registration No. 3,633,750," the court held the plaintiff had "no obligation to plead non-functionality in the complaint." Id.; see also Victorinox, 709 F. App'x at 47-49 (observing that registered trade dress holders do not bear the burden of showing non-functionality).

For these reasons, the Court is not persuaded by Omi's argument that the pleading requirements are the same for both registered and unregistered trade dress infringement claims. (See Reply at 8.) That interpretation would require every

plaintiff to plead each of the prong one elements for all trade dress infringement claims, regardless of whether the plaintiff registered its trade dress with the USPTO. Such argument is not rooted in the text of the Lanham Act. To the contrary, imposing the same pleading standards on both registered and unregistered trade dress holders would deny registered trade dress designs the benefits and presumptions afforded them by the Lanham Act. See Sulzer Mixpac, 988 F.3d at 178 n.2; see Samara Bros., 529 U.S. at 209; Victorinox, 709 F. App'x at 47; Lane Capital Mgmt., 192 F.3d at 345; Christian Louboutin, 696 F.3d at 216 n.10. It would also be redundant to require a plaintiff to plead the elements of its registered trade dress when that standard has already been satisfied through the USPTO's registration process.

Nor is this argument rooted in the Second Circuit's precedents. As discussed, the Second Circuit has already held that registered trade dress plaintiffs are not required to show at least two of three prong one elements required for unregistered trade dress claims: distinctiveness and non-functionality. See Lane Capital Mgmt., 192 F.3d at 345; Thompson Medical, 753 F.2d at 215-16; Victorinox, 709 F. App'x at 47-49. And Omi does not point to any decision from the Second Circuit requiring registered trade dress holders to show the remaining prong one element: precise expression of

24

character and scope. Instead, each of the Second Circuit
decisions cited by Omi involved *unregistered* trade dress
claims and, thus, do not support their argument that
registered trade dress claims are evaluated under the same
standard. (See Mot. at 7-9.) See, e.g., Sherwood 48 Assocs.
v. Sony Corp. of Am., 76 F. App'x 389, 391 (2d Cir. 2003)
(holding "vague and overbroad articulation of the trade dress
elements in the Amended Complaint" was "inadequate" under
§ 43(a) where trade dress was unregistered).

But to the extent these decisions are instructive here,
the Court finds that they reinforce why unregistered trade
dress claims are subject to the prong one inquiry while
registered trade dress claims are not. The concern animating
each of the decisions is that -- in the absence of the USPTO's
imprimatur of registration, and without detailed descriptions
and diagramed illustrations in the certificates of
registration -- defendants will be unable to determine what
they are alleged to have infringed upon, and courts (and
juries) will likewise be unable to accurately and
consistently determine defendants' liability (if any), unless
plaintiffs offer a precise expression of the asserted trade
dress' character and scope in the complaint.

These concerns are articulated most clearly in Yurman
Design. See 262 F.3d at 114 (noting plaintiff "ha[d] not

25

registered" its asserted mark). The Second Circuit explained that, in the absence of a certificate of registration, courts must vigilantly ensure that plaintiffs detail the elements of the design features that together comprise the asserted trade dress. See id. at 117. Otherwise, "without a specification of the design features," jurors "may conceive the trade dress in terms of different elements and features" and would be unable to "evaluate secondary meaning, overbreadth, or non-functionality," potentially leading to a "verdict . . . based on inconsistent findings." Id. (reaffirming § 43(a) claims are evaluated under the same "general principles" that "qualify[] a mark for registration under § 2" (quoting Two Pesos, 505 U.S. at 768)). Moreover, "a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that . . . the claimant seeks protection for an unprotectible style." Id. (observing that this requirement "assist[s] in winnowing out claims that are overbroad as a matter of law." Id. And in Landscape Forms, the Second Circuit reasoned that plaintiffs must offer "a precise expression of the character and scope of the claimed trade dress," because "courts will be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection."

113 F.3d at 381 (making no mention of plaintiffs registering their trade dress or producing certificates of registration).

These concerns are diminished where, as here, a trade dress has satisfied USPTO examination and a description of the trade dress' design features has been posted on the public registrar. And even if there is concern that a trade dress design was somehow registered in error, defendants may still "rebut the presumption of validity" by "show[ing ] by a preponderance of the evidence that the mark is ineligible for protection." Christian Louboutin, 696 F.3d at 216 n. 10 (citation omitted).[6] It is therefore unnecessary to demand the same showing of registered trade dress holders as required of unregistered trade dress holders.

The Court recognizes that Omi's argument is not entirely without support. They point to at least two decisions by courts in this district that have reached a contrary result, holding that registering a trade dress does not relieve plaintiffs of an obligation to specifically plead the trade dress' character and scope. See E. Remy Martin & Co. v. Sire

---

[6] Defendants can rebut the presumption of validity by pleading certain available affirmative defenses. See 15 U.S.C. § 1115(a) (providing that defendants may raise "any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered," such as that the registration "was obtained fraudulently" or that "the mark has been abandoned"); e.g., Victorinox, 709 F. App'x at 48 (rejecting argument that registered mark was invalid because registration was fraudulently obtained). But Omi does not raise any affirmative defenses in its Motion.

Spirits LLC, No. 21 Civ. 6838, 2022 WL 94882, at *10 (S.D.N.Y. Jan. 10, 2022); Heller Inc. v. Design Within Reach, Inc., No 09 Civ. 1909, 2009 WL 2486054, at *6 (S.D.N.Y. Aug. 14, 2009). (See Mot. at 10-11; Reply at 3-5.) But because the Court cannot square these decisions with the framework set forth by the Second Circuit, and without circuit precedent dictating a contrary result, the Court respectfully declines to reach the same conclusion.

First, in Heller, the court held that "[r]egistration, particularly a vague registration, does not affect the plaintiff's obligation to specify the elements of its allegedly distinctive trade dress" because "registration is prima facie evidence of the validity of the registered mark, not the clarity of its scope." 2009 WL 2486054, at *6 (quotation marks omitted). Not mentioned by Heller, however, is that the USPTO's registration process already requires applicants to clarify the character and scope and make a showing of distinctiveness before a trade dress can be registered. See TMEP §§ 1202.02(c)(i), (b)(i); see also McCarthy § 8:7. Indeed, the presumption of validity is premised on the fact that the registration process *already* requires applicants to clearly define the trade dress' character and scope and its distinctiveness. See Victorinox, 709 F. App'x at 47; Easy Spirit, 515 F. Supp. 3d at 70.

28

Next, in E. Remy Martin, the court held that plaintiff's "rel[iance] on a series of images, the registered marks, and a general description of the overall look" was "insufficient because absent sufficient particularity, a competitor would not know what new designs would be subject to challenge." 2022 WL 94882, at *10. But for the reasons already stated above, the Court finds that the descriptions of the trade dress' elements recorded in the certificates of registration are sufficient to put competitors on notice of what arrangement of design elements is protected and thus subject to a potential infringement claim.

The Court instead joins the majority of decisions in this Circuit holding that registered trade dress holders are not obligated to satisfy the prong one elements in order to assert an infringement claim under § 32(1). See, e.g., Lane Capital Mgmt., 192 F.3d at 345 (need not show distinctiveness); Victorinox, 709 F. App'x at 47-49 (need not show non-functionality); Telebrands Corp., 719 F. Supp. 2d at 299 (same) Nat'l Hockey League, 2019 WL 130576, at *7 (need not articulate precise character and scope); Capri Sun, 595 F. Supp. 3d at 145 (skipping prong one entirely); Easy Spirit, 515 F. Supp. 3d at 70 (same); BBK Tobacco & Foods, 408 F. Supp. 3d at 520 (same); Goat Fashion Ltd., 2020 WL 5758917, at *9 (same); Mr. Water Heater, 648 F. Supp. 2d at 584 (same).

Lastly, Omi claims that Nike's certificates of registration are inadequate because their descriptions of the trade dress designs "are so vague and broad that they read-on most shoes" and "thus pose an anticompetitive risk." (Mot. at 6 (quotation marks and citation omitted).) To the contrary, the Court finds that Nike's certificates of registration illustrate why the USPTO's trade dress approval process entitles registered marks to a presumption of validity. Each of Nike's trade dress certificates includes detailed written descriptions, accompanied by diagrammed illustrations that use solid lines to identify the unique elements of the trade dress design and dotted lines to distinguish the elements of the design that are not part of the trade dress. (See, e.g., Compl. Ex. 5 ("The broken lines show the position of the mark and are not claimed as part of the mark.").) These illustrated descriptions are sufficient to identify each of the claimed trade dress elements and to show how those elements combine to comprise the overall trade dress.

By contrast, not only do most of the cases cited by Omi involve unregistered trade dress, but the trade dress descriptions offered in those cases were far less precise than those in Nike's certificates of registration. For example, the plaintiffs in Yurman Design had "not even offered . . . a description of [its trade] design elements . . . for

[the court's] consideration." 262 F.3d at 117. "Pressed by [the defendant] on appeal to provide some description of its trade dress," the plaintiff offered only the following description: "the artistic combination of cable jewelry with other elements." Id. (brackets omitted). And there was no diagrammed illustration to add color to this generic description.

Similarly, in National Lighting Company, Inc. v. Bridge Metal Industries, LLC, the court faulted the plaintiff for being "unable to identify which of the twelve listed design elements are consistent throughout the entire product line or how specifically the claimed trade dress incorporates those common elements." 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009). And in Shevy Custom Wigs, Inc. v. Aggie Wigs, the plaintiff's descriptions of its trade dress were less precise and more open-ended than the descriptions offered in Nike's certificates of registration, and the descriptions of the trade dress there did not come with diagrammed illustrations, as did Nike's. See No. 06 Civ. 1657, 2006 WL 3335008, at *4-5 (E.D.N.Y. Nov. 17, 2006).

Accordingly, the Court concludes that Nike is permitted to rely on its certificates of registration to satisfy prong one of the Lanham Act infringement test, and that Nike is not required to separately articulate the trade dress' character

31

and scope or its distinctiveness in order to plead a *prima facie* claim for relief.

### IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 69) of defendants Reloaded Merch LLC and Bill Omar Carrasquillo to dismiss the Complaint of plaintiff Nike Inc., pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Dkt. No. 1) is **DENIED**; and it is further

**ORDERED** that defendants Reloaded Merch LLC and Bill Omar Carrasquillo are directed to file an Answer to the Complaint within twenty-one (21) days of the date of this Decision and Order.

The Clerk of Court is respectfully directed to close the pending motion at Dkt. No. 69.

**SO ORDERED.**

Dated:     22 December 2023
           New York, New York

                                        Victor Marrero
                                           U.S.D.J.