UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC., | |
| Plaintiff, | **MEMORANDUM** **OPINION & ORDER** |
| v. | 23 Civ. 660 (PGG) |
| USAPE LLC., | |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

> Plaintiff Nike, Inc. brings this action against Defendant USAPE LLC ("BAPE") for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, false designation of origin and unfair competition under 15 U.S.C. § 1125(a), common law trademark infringement and unfair competition, trademark infringement under New York General Business Law ("GBL") § 133, and dilution under GBL § 360-L. (Cmplt. (Dkt. No. 1) ¶¶ 60-96)  Nike alleges that BAPE has infringed on certain of Nike's trademarks through BAPE's sale of BAPE footwear. (Id. ¶¶ 41-59)

> Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 25)  For the reasons stated below, Defendant's motion to dismiss will be denied.

## BACKGROUND

### I.    FACTS[1]

> Plaintiff Nike, Inc. is an Oregon corporation headquartered in Oregon. (Cmplt. (Dkt. No. 1) at ¶ 6)  Nike "owns some of the world's most valuable trademarks.  Among them

---

[1]  The facts set forth in this opinion are drawn from the Complaint and are presumed true for purposes of resolving Defendant's motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

are Nike's trade dress designs for its iconic Air Force 1, Air Jordan 1, and Dunk sneakers." (Id. ¶ 1)  These marks (the "Asserted Marks") are registered with the United States Patent and Trademark Office (the "PTO").  (Id. ¶¶ 24, 30, 37)  Nike "maintains strict control over the use of the Asserted Marks in connection with its products so that [it] can maintain control over its related business reputation and goodwill." (Id. ¶ 40)

Defendant BAPE is a Delaware corporation, headquartered in New York, that sells apparel and footwear.  (Id. ¶¶ 7, 43-44)

In 1982, Nike launched its Air Force 1 basketball sneaker.  (Id. ¶ 16)  "[O]ver three decades since its first release, the Air Force 1 – bearing the same, classic silhouette – is a fashion staple with nearly 2,000 editions and colorways." (Id. ¶ 16)  "Nike registered the Air Force 1 trade dress on the Principal Register of the U.S. Patent and Trademark Office." (Id. ¶ 24)  Nike's Air Force 1 trade dress is registered under U.S. Trademark Registration Nos. 3,451,905; 3,451,906; and 5,820,374.  (Id. ¶ 24-25; Exs. 1-3)

"The Nike Dunk sneaker began as a basketball sneaker in the 1980s." (Id. ¶ 26)  "[T]oday it is recognized as one of the most iconic and influential sneakers of all time." (Id. ¶ 29)  "Nike has registered the Dunk trade dress on the Principal Register of the U.S. Patent and Trademark Office." (Id. ¶ 30)  Nike's Dunk trade dress is registered under U.S. Trademark Registration No. 3,711,305.  (Id. ¶ 31; Ex. 4)

"Nike released the Air Jordan 1 to consumers in 1985." (Id. ¶ 32)  "Today, the Air Jordan 1 continues to be recognized as having one of the most famous and influential sneaker designs of all time." (Id. ¶ 36)  "Nike has registered the Air Jordan 1 trade dress on the Principal Register of the U.S. Patent and Trademark Office." (Id. ¶ 37)  Nike's Air Jordan 1 trade dress is registered under U.S. Trademark Registration Nos. 6,368,694 and 6,368,691.  (Id. ¶ 37; Exs. 5-6)

"BAPE was founded in Japan by Tomoaki Nagao in 1993." (Id. ¶ 43) "Initially, BAPE exclusively sold apparel in Japan." (Id.) "In the early 2000s, BAPE began selling footwear in Japan and released the BAPE STA," which is a sneaker product. (Id.) "BAPE began selling its products in the U.S. in the mid-2000s." (Id.) "Its presence and product offerings in the U.S. footwear market were limited and not widely available through online websites or markets." (Id. ¶ 44)

In the Complaint, Nike alleges that "BAPE has wrongfully capitalized on Nike's fame and its Asserted Marks by making, promoting, advertising, marketing, and selling in the United States footwear bearing the Asserted Marks and/or confusingly similar marks (the 'Infringing Products')." (Id. ¶ 41) "BAPE's Infringing Products include sneakers BAPE refers to as BAPE STA, BAPE STA Mid, COURT STA, COURT STA High, Sk8 STA, and any other footwear that bears the Asserted Marks and/or confusingly similar marks." (Id. ¶ 42)

| Nike's Trademarked Designs | Genuine Nike Products | BAPE's Infringing Products |
|---|---|---|
| U.S. Reg. No. 3,451,905 | Air Force 1 Low | BAPE STA |
| U.S. Reg. No. 3,451,906 | Air Force 1 Mid | BAPE STA Mid |
| U.S. Reg. No. 3,711,305 | Dunk Low | SK8 STA |
| U.S. Reg. No. 5,820,374 | Air Force 1 Midsole Design | BAPE STA |
| U.S. Reg. No. 6,386,694 | Air Jordan 1 High | COURT STA High |
| U.S. Reg. No. 6,368,691 | Air Jordan 1 Low | COURT STA |

"Despite its minimal presence in the U.S. market, Nike contacted and met with BAPE in 2009 to address BAPE's pirating of Nike's iconic Air Force 1 design and to protect Nike's intellectual property rights." (Id. ¶ 45) According to Nike, "[f]ollowing the meeting, BAPE significantly and materially diminished its U.S. activities." (Id.) "But in 2021, after years of de minimis and sporadic sales of infringing footwear, BAPE drastically increased its infringement of Nike's trademarks." (Id. ¶ 46) For example, "[o]n February 7, 2021, BAPE re-introduced the original, infringing BAPE STA silhouette after a five year hiatus." (Id.) "Around that time, BAPE also introduced various versions of the infringing COURT STA and SK8 STA

4

sneakers." (Id.) "BAPE [also] rapidly expand[ed] its physical presence in the United States."

(Id.) "CVC Capital Partners Asia V Limited ('CVC') announced that it completed an investment

in BAPE to support the expansion of BAPE's business both online and geographically, with a

focus [on] pursuing the United States market." (Id.)

Nike alleges that "[t]here is . . . confusion in the marketplace, including initial

interest confusion, post-sale confusion, confusion in the secondary market, and confusion as to

affiliation and/or association between Nike, BAPE, and other third-parties caused by BAPE's

copying of the Asserted Marks." (Id. ¶ 48)  Nike further alleges that

> BAPE's actions . . . are intended to cause confusion, mistake, or deception as to the
> source of BAPE's Infringing Products and are intended to cause consumers and
> potential consumers to believe that BAPE's business and products are associated
> with and/or approved by Nike, when they are not.

(Id. ¶ 54)  Nike also complains that BAPE's actions "are . . . likely to impair the distinctiveness

of Nike's Asserted Marks through false association with BAPE, constituting dilution by

blurring." (Id. ¶ 55)

"On August 24, 2022, Nike sent BAPE a cease-and-desist letter informing BAPE

of Nike's infringement allegations," but "BAPE continues to promote, sell, and distribute its

Infringing Products" in the United States.  (Id. ¶ 57)

## II.  **PROCEDURAL HISTORY**

The Complaint was filed on January 25, 2023, and alleges trademark infringement

in violation of 15 U.S.C. § 1114, false designation of origin and unfair competition in violation

of 15 U.S.C. § 1125(a), common law trademark infringement and unfair competition, trademark

infringement under GBL § 133, and dilution under GBL § 360-l.  (Cmplt. (Dkt. No. 1) ¶¶ 60-

96)

On May 17, 2023, Defendants moved to dismiss, pursuant to Fed. R. Civ.

P. 12(b)(6), for failure to state a claim.  (Def. Mot. (Dkt. No. 25))

## DISCUSSION

### I.     LEGAL STANDARDS

#### A.     Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  "[T]he court is to accept as true all facts alleged in the

complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning

Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of

the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,

507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

Under this standard, a plaintiff is required only to set forth a "short and plain

statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft to 'sho[w] that the

pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in Twombly) (quoting Fed.

R. Civ. P. 8(a)).  To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough

to raise a right to relief above the speculative level," id. at 555, and present claims that are

"plausible on [their] face." Id. at 570.  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's
liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"
Id. (quoting Twombly, 550 U.S. at 557).  And where "the allegations in a complaint, however
true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a
plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[]
complaint must be dismissed." Id. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule
12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to
the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco
v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner,
Inc., 282 F.3d 147, 153 (2d Cir. 2002) and Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir.
1999)).  "Where a document is not incorporated by reference, the court may never[the]less
consider it where the complaint relies heavily upon its terms and effect, thereby rendering the
document integral to the complaint." Gallagher v. Empire HealthChoice Assurance, Inc., 339 F.
Supp. 3d 248, 254 (S.D.N.Y. 2018) (alteration in original) (quotation marks omitted).

**B.      Lanham Act Claims**

The Lanham Act defines a trademark as "any word, name, symbol, or device, or
any combination thereof" that is used "to identify and distinguish his or her goods, including a
unique product, from those manufactured or sold by others and to indicate the source of the
goods, even if that source is unknown." 15 U.S.C. § 1127. "From its definition of 'trademark'
onward, the Lanham Act views marks as source identifiers – as things that function to 'indicate

the source' of goods, and so to 'distinguish' them from ones 'manufactured or sold by others.'"

Jack Daniel's Properties, Inc. v. VIP Prod. LLC, 599 U.S. 140, 157 (2023) (quoting 15 U.S.C

§ 1127).  "Whatever else it may do, a trademark is not a trademark unless it identifies a product's

source (this is a Nike) and distinguishes that source from others (not any other sneaker brand)

. . . . In other words, a mark tells the public who is responsible for a product." Id. at 146.

"'[T]he crucial issue in an action for trademark infringement . . . is whether there

is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be

misled, or indeed simply confused, as to the source of the goods in question.'" Savin Corp. v.

Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004) (quoting Mushroom Makers, Inc. v. R.G. Barry

Corp., 580 F.2d 44, 47 (2d Cir.1978)).  "The owner of [a trademark] acquires the right to prevent

his goods from being confused with those of others and to prevent his own trade from being

diverted to competitors through their use of misleading marks." Pirone v. MacMillan, Inc., 894

F.2d 579, 581 (2d Cir. 1990).  "'There are no rights in a [trademark] beyond these.'" Id.

(quoting Industrial Rayon Corp. v. Dutchess Underwear Corp., 92 F.2d 33, 35 (2d Cir. 1937)).

Section 43(a) of the Lanham Act protects trade dress.  15 U.S.C. § 1125.  "A

product's trade dress encompasses the overall design and appearance that make the product

identifiable to consumers." Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 269 F.3d 114, 118

(2d Cir. 2001).  "'[T]he standards for false designation of origin claims under Section 43(a) of

the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under

Section 32 (15 U.S.C. § 1114).'" Jackpocket, Inc. v. Lottomatrix NY LLC, 2022 WL 17733156,

at *21 (S.D.N.Y. Dec. 7, 2022) (quoting Twentieth Century Fox Film Corp. v. Marvel

Enterprises, Inc., 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002)).  Both sections impose civil

liability where the unauthorized use of a protected mark "is likely to cause confusion, or to cause

mistake, or to deceive." 15 U.S.C. §§ 1114(1)(A); 1125(a)(1)(A). "And the single type of confusion most commonly in trademark law's sights is confusion 'about the source of a product or service.' . . . Confusion as to source is the bête noire of trademark law – the thing that stands directly opposed to the law's twin goals of facilitating consumers' choice and protecting producers' good will." Jack Daniel's, 599 U.S. at 147 (quoting Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 428 (2003)). "[C]auses of action under both the Lanham Act and New York State common law . . . are composed of the same elements. We therefore analyze them together." Nat'l Hockey League v. Hockey Cup LLC, No. 18 Civ. 6597 (DLC), 2019 WL 130576, at *7 (S.D.N.Y. Jan. 8, 2019) (quoting Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 101 n.6 (2d Cir. 2010)).

A plaintiff bringing a false designation of origin claim must "show [1] that its trade dress is entitled to protection under the Act, and [2] that the defendant's dress infringes on the plaintiff's dress by creating a likelihood of confusion." Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 377 (2d Cir. 1997).

> To demonstrate that a mark is valid and entitled to protection, courts require plaintiffs to make three separate showings. First, the plaintiff must "offer a precise expression of the character and scope of the claimed trade dress." GeigTech E. Bay LLC v. Lutron Elecs. Co., 352 F. Supp. 3d 265, 275 (S.D.N.Y. 2018) (quotation marks omitted). Second, the plaintiff "has the burden of proving that the matter sought to be protected is not functional." Id. at 275 (quoting 15 U.S.C. § 1125(c)(4)). Third, the plaintiff must "show that its trade dress has acquired secondary meaning," which "has been interpreted by the Supreme Court to mean that a plaintiff must show that its trade dress is distinctive." Id.

Nike, Inc. v. Reloaded Merch LLC, No. 22 Civ. 10176 (VM), 2023 WL 8879274, at *3 (S.D.N.Y. Dec. 22, 2023). To establish secondary meaning and distinctiveness, a plaintiff "must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc., 456 U.S. 844, 851 n.11 (1982); Blisscraft of Hollywood v. United Plastics Co., 294

F.2d 694, 697 (2d Cir. 1961) ("To establish a secondary meaning for an article it must be shown

that the design is a mark of distinction identifying the source of the article and that purchasers

are moved to buy it because of its source.").

Here, in moving to dismiss, Defendant BAPE contends that "Nike has failed to

identify its purported trade dress with the requisite particularity." (Def. Br. (Dkt. No. 26) at 5)[2]

## II.   <u>ANALYSIS</u>

BAPE contends that "[t]he standard for pleading trade dress protection is

particularly high for product configuration trade dress" (<u>id.</u> at 9), and that "Nike's allegations in

the Complaint fall short of what is required for a cognizable trade dress claim." (<u>Id.</u> at 10)

According to BAPE, "Nike does not plead <u>any</u> of the elements that make up its Asserted Trade

Dress." (<u>Id.</u>) (emphasis in original)  Because "Nike does not identify any elements of its trade

dress," it "has failed to identify 'which of [its] trade design elements are distinctive and how they

are distinctive.'"  (<u>Id.</u> at 11 (quoting <u>Sara Designs, Inc. v. A Classic Time Watch Co.</u>, 234 F.

Supp. 3d 548, 555 (S.D.N.Y. 2017))  BAPE further argues that "Nike cannot cure this deficiency

by simply importing the descriptions of its trade dress from the Asserted Registrations into an

Amended Complaint, as those descriptions are also impermissibly vague." (<u>Id.</u> at 11-12)

Nike responds that it is not required to plead the specific elements of its trade

dress that are distinctive and how they are distinctive:  "If the plaintiff's trade dress is registered,

like Nike's Asserted Trade Dress in this case, the plaintiff may satisfy the first prong of the

pleading requirements by producing its certificate of registration." (Pltf. Br. (Dkt. No. 27) at 12-

13)  According to Nike, the higher standard for pleading trade dress protection only applies to

---

[2] Citations to page numbers refer to the pagination generated by this District's Electronic Case
Files ("ECF") system.

trade dress that has not been registered.  (Id. at 24 ("a registered trade dress, like Nike's Asserted Trade Dress, is protectable until a defendant, like BAPE, proves otherwise"))

The Lanham Act states that

[a]ny registration issued under the Act of March 3, 1881, or the Act of February 20, 1905, or of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered.

15 U.S.C. § 1115(a).

15 U.S.C. § 1057(b) provides that

[a] certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

15 U.S.C. § 1057(b).

The Second Circuit has explained that "[r]egistration on the principal register confers on the mark's holder certain benefits in litigation, including a rebuttable presumption that the mark is valid." Sulzer Mixpac AG v. A&N Trading Co., 988 F.3d 174, 178 n.2 (2d Cir. 2021).  "In practice, this presumption operates by satisfying prong one of the infringement test (the trade dress' validity) and shifting the inquiry to the second prong (likelihood of confusion)." Reloaded Merch LLC, 2023 WL 8879274, at *5 (citing Victorinox AG v. B&F Sys., Inc., 709 F. App'x 44, 47 (2d Cir. 2017)); see also Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999) ("A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the

registrant has the exclusive right to use the mark in commerce."); Spin Master Ltd. v. Alan

Yuan's Store, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018) ("The first prong is satisfied by

showing that a mark is valid and registered, owned by the registrant, and that the registrant has

the exclusive right to use the mark in commerce."); BBK Tobacco & Foods, LLP v. Galaxy VI

Corp., 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019) ("A plaintiff may satisfy [the first prong of the

infringement test] by producing a valid certificate of registration.").

   "The reason courts consider registered trade dress presumptively valid is that the

USPTO requires applicants to make the same showing that prong one requires." Reloaded

Merch LLC, 2023 WL 8879274, at *5.  The Trademark Manual of Examining Procedure "set[s]

forth the guidelines and procedures followed by the examining attorneys at the PTO," West Fla.

Seafood v. Jet Restaurants, 31 F.3d 1122, 1127 n.8 (Fed. Cir. 1994), and states that "[w]hen an

applicant applies to register a product design, product packaging, color, or other trade dress for

goods or services, the examining attorney must separately consider two substantive issues:  (1)

functionality; and (2) distinctiveness."  Trademark Manual (Nov. 2023 ed.), § 1202.02.  The

Trademark Manual further provides that, "[t]o ensure proper examination, the drawing and

description of . . . a mark must accurately depict the mark the applicant intends to register."  Id.

§ 1202.02(c).  Given the analysis that is part of the registration process, there is a "rule that

registered trademarks are presumed to be distinctive and should be afforded the utmost

protection."  Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir.

1986); see also Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 393 (2d Cir. 1995) ("The

USPTO's decision to register the mark – which it initially deemed descriptive – under 15 U.S.C.

§ 1052(f), after Arrow submitted evidence of secondary meaning, creates a rebuttable resumption

that the mark enjoys secondary meaning.").

Plaintiffs with unregistered trade dress must "articulate the design elements that compose the trade dress," <u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 116 (2d Cir. 2001), because

> [w]ithout such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, <u>i.e.</u>, the claimant seeks protection for an unprotectable style, theme or idea.

<u>Landscape Forms, Inc.</u>, 113 F.3d at 381.

Where – as here – trade dress has been registered, however, the PTO has already considered the design elements, their distinctiveness, and whether the trade dress is functional. As a result, plaintiffs with registered trade dress need not make the same showing at the pleading stage as those with unregistered trade dress. <u>See</u> <u>Reloaded Merch LLC</u>, 2023 WL 8879274, at *6 ("A certificate of registration therefore eliminates any need for plaintiffs to prove a trade dress' validity by separately describing in its complaint the trade dress' precise character and scope, distinctiveness, and non-functionality.").

In arguing that the Complaint is deficient – notwithstanding Nike's registration of its trade dress – BAPE relies on <u>E. Remy Martin & Co. v. Sire Spirits LLC</u>, No. 21 Civ. 6838 (AKH), 2022 WL 94882, at *10 (S.D.N.Y. Jan. 10, 2022) and <u>Heller Inc. v. Design Within Reach, Inc.</u>, No 09 Civ. 1909 (JGK), 2009 WL 2486054, at *6 (S.D.N.Y. Aug. 14, 2009). (<u>See</u> Def. Br. (Dkt. No. 26) at 11)

<u>E. Remy Martin</u> is a trade dress infringement case premised on the design of liquor bottles. In granting a motion to dismiss, the court found that – although plaintiff's marks

13

were registered – the complaint was nonetheless deficient, because it did not provide "a list of clearly and separately identified elements [of trade dress]" entitled to protection:

> It is beyond dispute that Plaintiff has registered marks, which are presumptively entitled to protection; however, the Complaint does not specifically allege the elements comprising its trade dress. Rather than providing a list of clearly and separately identified elements, the Complaint relies on a series of images, the registered marks, and a general description of the overall look – a toroidal, faceted, and central-recessed design, as contained in both the '649 Patent, the Diamant Bottle, and the Rémy Bottle. Compl. ¶¶ 2, 18, 50, 79, 80, 81; <u>see</u> also <u>id.</u> ¶ 61 (alleging infringement of "RÉMY's iconic toroidal-shaped cognac bottle and brand"). This is insufficient because absent sufficient particularity, a competitor would not know what new designs would be subject to challenge. <u>See Yurman Design, Inc.</u>, 262 F.3d at 116-17. Plaintiff's claims fail at the threshold because the Complaint does not "articulate the precise nature of the trade dress [P]laintiff purports to claim." <u>Sara Designs, Inc. v. A Classic Time Watch Co. Inc.</u>, 234 F. Supp. 3d 548 (S.D.N.Y. 2017).

<u>E. Remy Martin & Co.</u>, 2022 WL 94882, at *11. According to the <u>E. Remy Martin</u> court, "the discrete elements which make up [the protected trade dress] must be separated out and clearly identified in a list." <u>Id.</u> at *10.

   <u>Heller</u> is a trade dress infringement case involving the design of two chairs. "In the Complaint, the plaintiff offer[ed] a vague description of its claimed trade dress as an 'ornamental and sculptural chair' and append[ed] two images of the chair as exhibits":

> Exhibit A of the Complaint consists of an image included in the plaintiff's trademark registration of the Bellini Chair; Exhibit C includes an image from the defendant's website promoting the Bellini Chair. (Compl. Exs. A and C.) The plaintiff includes no additional details regarding which elements of the plaintiff's trade dress design are distinctive, much less how certain elements are distinctive.

<u>Heller Inc.</u>, 2009 WL 2486054, at *6. Plaintiff sought to rely on the images attached to the complaint, arguing that they "provide the most precise definition of the trade dress possible." <u>Id.</u> The court rejected that approach, noting that plaintiff had not provided any written description of its protected trade dress, and ruling that "images alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress." <u>Id.</u>

The <u>Heller</u> court also rejected plaintiff's argument that – as a result of its trademark registration – it was not required to list the protectible elements of its trade dress:

> The plaintiff also suggests that because the plaintiff has a trademark registration, it need not articulate the specific elements of the trade dress that should be protected. A registration is "prima facie evidence of the validity of the registered mark," not the clarity of its scope. 15 U.S.C. § 1115(a). Registration, particularly a vague registration, does not affect the plaintiff's obligation to specify the elements of its allegedly distinctive dress. <u>See</u>, <u>e.g.</u>, <u>Cartier, Inc. v. Four Star Jewelry Creations, Inc.</u>, 348 F.Supp.2d 217, 223 (S.D.N.Y. 2004) (articulating the specific elements that constitute its distinct trade dress, despite having a registered mark). The plaintiff cites no case that holds it is unnecessary to specify the elements of trade dress and how the elements are distinctive simply because the plaintiff has obtained a trademark registration.

<u>Id.</u> at 6-7.

This Court declines to follow <u>E. Remy Martin</u> and <u>Heller</u> to the extent that they hold that the owner of a registered mark is obligated to plead facts showing that their trade dress is protectable under the Lanham Act. The Second Circuit has instructed that, "[a]s to the first prong [of the analysis for a false designation of origin claim], a certificate of registration with the PTO is 'prima facie evidence that the mark is registered and valid (<u>i.e.</u>, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce.'" <u>Guthrie Healthcare Sys. v. ContextMedia, Inc.</u>, 826 F.3d 27, 37 (2d Cir. 2016) (quoting <u>Lane Cap. Mgmt.</u>, 192 F.3d at 345); <u>Victorinox</u>, 709 F. App'x at 47 ("As to the first stage, a certificate of registration with the [USPTO] is prima facie evidence that the mark is registered and valid (<u>i.e.</u>, protectable)."); <u>see also</u> <u>Caliko, SA v. Finn & Emma, LLC</u>, No. 21 Civ. 3849 (VEC), 2022 WL 596072, at *6 (S.D.N.Y. Feb. 28, 2022) ("A certificate of registration with the Patent and Trademark Office ("PTO") is <u>prima facie</u> evidence that the mark is entitled to protection.").

Indeed, the Second Circuit and numerous courts in this District have repeatedly held that registration creates a presumption of protectability as to all components of the prong

one inquiry, including scope, distinctiveness, and secondary meaning.  See, e.g., Lane Capital

Mgmt., 192 F.3d at 345 ("[r]egistration by the [PTO] without proof of secondary meaning

creates the presumption that the mark . . . is inherently distinctive"); Thompson Medical Co., Inc.

v. Pfizer, Inc., 753 F.2d 208, 216 n.14 (2d Cir. 1985) ("proof of secondary meaning is not

required when a plaintiff brings a claim for infringement of a registered mark" because

"registered marks are presumed to represent the source in the minds of the public"); Lois

Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986) (noting that

registered trademarks are "presumed to be distinctive"); Victorinox, 709 F. App'x at 47-49

(noting that registered trade dress holders do not bear the burden of showing non-functionality);

Wonderful Co. LLC v. Nut Cravings Inc., No. 21 Civ. 3960 (MKV), 2023 WL 6279197, at *8

(S.D.N.Y. Sept. 26, 2023) (a "plaintiff asserting a claim for registered trade dress infringement

need not plead nonfunctionality"); National Hockey League v. Hockey Cup LLC, No. 18 Civ.

6597, 2019 WL 130576, at *7 (S.D.N.Y. Jan. 8, 2019) (registration of trade dress satisfies the

prong one requirement to offer "a precise expression of the character and scope of the claimed

trade dress"); A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC, 131 F. Supp. 3d 196, 214

(S.D.N.Y. 2015) (complaint's reference to registered trademark "is sufficient to allege plausibly

the distinctiveness required by the dilution statute."); Telebrands Corp. v. Del Laboratories, Inc.,

719 F. Supp. 2d 283, 299 (S.D.N.Y. 2010) ("a claim for registered trademark infringement under

§ 32(1) of the [Lanham] Act does not require [a plaintiff] to plead non-functionality," because a

"certificate of trademark registration is prima facie evidence of the validity of a trademark").

And in Nike, Inc., v. Reloaded Merch LLC & Bill Omar Carrasquillo, No. 22 Civ.

10176 (VM), 2023 WL 8879274 (S.D.N.Y. Dec. 22, 2023), the court denied a Rule 12(b)(6)

motion to dismiss premised on the same argument that BAPE makes here.

In that case, Nike brought claims for trademark infringement, false designation of origin, unfair competition, and trademark dilution based on defendants' sneaker designs. Nike's claims were premised on, <u>inter alia</u>, trade dress registrations it had obtained for a number of its sneaker designs, including those at issue in the instant case. <u>Id.</u> at *1-2. The defendants in <u>Reloaded Merch</u> argued that Nike's trade dress claim should be dismissed because Nike's complaint did not contain "a precise expression of the character and scope of the claimed trade dress," and did not specify "which features [of Nike's designs] are distinctive and how they are distinctive." <u>Id.</u> at *4. As here, Nike responded that it had satisfied its <u>prima facie</u> burden by incorporating the certificates of registration into its complaint. <u>Id.</u>

After a thorough analysis of the relevant Lanham Act provisions and case law, the <u>Reloaded Merch</u> court concluded that "Nike [had] satisfied the first prong of the infringement test by registering its trade dress with the USPTO and attaching the certificates of registration to the Complaint." <u>Id.</u>; <u>see id.</u> at *7 ("Having already made a showing of validity and protectability before the USPTO during the registration process, the holder of a registered trade dress is free from needing to describe in its complaint how it meets each element of prong one.").

Because the first prong of the false designation of origin inquiry addresses protectability, and because registration of trade dress constitutes <u>prima facie</u> evidence that a plaintiff's trade dress is entitled to protection, the first prong of the analysis is satisfied – at least for purposes of pleading – by evidence of registration. <u>See</u> <u>BBK Tobacco & Foods, LLP v. Galaxy VI Corp.</u>, 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019) ("If the allegedly infringed mark is registered, the first prong is satisfied by showing that it is valid and registered." (quotation marks and brackets omitted)); <u>Goat Fashion Ltd. v. 1661, Inc.</u>, No. 19 Civ. 11045 (PAE), 2020 WL

5758917, at *9 (S.D.N.Y. Sept. 28, 2020) (Where "[t]here is no dispute that [a] mark was lawfully registered with the USPTO," "[t]he first element is . . . satisfied.").

In any event – even if such were not the case – Nike's certificates of registration, as incorporated in the Complaint, adequately articulate the scope of Nike's asserted trade dress. Nike's registrations contain detailed written descriptions as well as diagrams that specifically denote which parts of the trade dress are being claimed as distinctive.  (See Cmplt. (Dkt. No. 1) at Exs. 1-6)  While Defendant argues that "three of the six descriptions are completely identical, and two of the other three are nearly identical" (Def. Br. (Dkt. No. 28) at 11), the diagrams of the trade dress are sufficient to identify the scope of the trade dress that is being claimed as distinctive.

The registrations at issue in Heller and E. Remy Martin contain no explanation of what was being claimed as distinctive trade dress and what was not.  For example, in Heller, plaintiff attached two images of the chair at issue and described the trade dress as an "ornamental and sculptural chair."  Heller, 2009 WL 2486054, at *6.



(Heller v. Design Within Reach, Inc., No. 09 Civ. 1909 (JGK), Cmplt. (Dkt. No. 1) at Ex. A)

And in <u>E. Remy Martin</u>, plaintiff provided images of the liquor bottles at issue and its trade dress registration, but it relied on a general description of the overall appearance of its bottles in asserting infringement: a "toroidal, faceted, and central-recessed design." <u>E. Remy Martin</u>, 2022 WL 94882, at \*11. As noted by the court in that case (<u>see id.</u> at \*1), the images of the bottles provided by plaintiff did not distinguish between the elements of the trade dress plaintiff was seeking to protect and the unprotectable elements:

| Mark | U.S. Registration Number | Date of Issuance |
|------|--------------------------|------------------|
|      | 1,385,396 | March 4, 1986 |
|      | 2,068,531 | June 10, 1997 |
|      | 3,436,246 | May 27, 2008 |
|      | 5,337,465 | November 21, 2017 |

FIGURE 1

<u>E. Remy Martin</u>, 2022 WL 94882, at \*1.

By contrast, Nike's trade dress registrations use broken and solid lines to identify the scope of the trade dress Nike seeks to protect:



(Cmplt. (Dkt. No. 1) at Ex. 1 (Trade Dress Registrations); see id. ("The broken lines show the position of the mark and are not claimed as part of the mark."))

The written descriptions in Nike's trade dress registrations are also much more detailed than those at issue in Heller and in E. Remy Martin.  One such description reads as follows:  "The mark consists of the design of the stitching on the exterior of the shoe, the design of the material panels that form the exterior body of the shoe, the design of the wavy panel on top of the shoe that encompasses the eyelets for the shoe laces, the design of the vertical ridge pattern on the sides of the sole of the shoe, and the relative position of these elements to each other."  (Id.)

At this stage of the litigation, this Court is not prepared to rule that Nike's written descriptions and trade dress diagrams are insufficient articulations of "the specific elements of the trade dress that should be protected."  Heller, 2009 WL 2486054, at *6.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 25).

Dated: New York, New York
       March 4, 2024

                              SO ORDERED.


                              _____
                              Paul G. Gardephe
                              United States District Judge